182 So. 50

**ROCHELL v. CITY OF FLORENCE.**

8 Div. 901.

Supreme Court of Alabama.

June 16, 1938.

314

W. H. Mitchell, of Florence, for appellee.

Horace C. Wilkinson, of Birmingham, for appellant.

BROWN, Justice.

This appeal is by the complainant, as authorized by § 6081 of the Code, 1923, from a decretal order of the Circuit Court of Lauderdale County, sitting in Equity, discharging a temporary injunction issued by the Register on fiat granted by the Honorable J. F. Thompson, one of the Judges of the Tenth Judicial Circuit, returnable to the Circuit Court of Lauderdale County.

The bill was filed to restrain and enjoin the city of Florence, a municipal corporation of said county, from enforcing one of its ordinances levying a license tax of $500 on "any person, firm, or corporation distributing or causing to be distributed in the city soft drinks or similar extracts or beverages exclusively from a warehouse located anywhere."

The ground on which the motion to discharge was rested was that said injunction was granted in violation of § 8312(1) of the Code of 1928, which provides, that:

"No temporary restraining order or temporary injunction shall issue to any municipality of this state, its officers, agents or employees, enjoining or restraining the enforcement of any ordinance of such municipality, whether valid or invalid, or any proceedings thereunder, until a time and place have been set for the hearing of the application for such temporary restraining order or temporary injunction, and notice of such time and place, together with a copy of the bill, has been served upon the mayor or other chief executive officer of such municipality at least twenty-four hours prior to the time set for such hearing. (1927, p. 64.)"

It appears from the record that the bill of complaint and the complainant's application for the temporary injunction was presented to Judge Thompson on March 3, 1938, that the bill was not filed until March 7, four days or ninety-six hours, later, and the writ was issued and served on the last mentioned date.

The first contention of the appellant is that the discretion as to whether or not an application for temporary injunction will be granted with or without notice to the adverse party in interest is an element of judicial power; that this element of judicial power was committed to and vested in the Court of Chancery, created by the Constitution, as it existed at common law, and it is not within legislative competence to regulate the exercise of this power, by prescribing notice of time and place of hearing such application.

As supporting this contention appellant cites Sections 13, 43 and 146, of the Constitution of 1901, and State ex rel. Winter v. Sayre, 118 Ala. 1, 24 So. 89, decided in 1897, and Adcock v. State, 142 Ala. 30, 37 So. 919, decided November Term, 1904.

All that the case of State ex rel. Winter v. Sayre, supra, decides, that could be at all pertinent, is that the Court of Chancery, as then constituted, was a creature of the Constitution of 1875, being first so created by the Constitution of 1868. That the court was so created "without any special definition or description of the jurisdiction they were to exercise, and such definition or description was not necessary. Such courts were known to the common law, had been instituted here in the earliest days of organized government, exercising the jurisdiction pertaining to such courts in England, whence all our institutions were derived, *so far as adapted to our condition,*

*institutions, and general jurisprudence."* [Italics supplied]. 24 So. page 91.

This, as the court held, was the effect of Section 1 of Article 6 of the Constitution of 1875, which, as observed, was "the counterpart of the same section of the same article of the constitution of 1868, the immediate predecessor" of the Constitution of 1875.

It was further observed: "The original Constitution of 1819, and its successors of 1861 and 1865, vested the judicial power 'in one supreme court, circuit courts to be held in each county in the state, and such inferior courts of law and equity, to consist of not more than five members, as the general assembly may from time to time direct, ordain and establish.' Each declared the power of the general assembly to *establish courts of chancery,* and to establish in each county a court of probate, and contained provisions by which the senate was constituted the sole tribunal for the trial of all impeachments of civil officers." [Italics supplied].

Adcock v. State, supra, merely holds that the circuit court is a creature of the Constitution, and that an act of the Legislature which undertook to deprive said court of the power to organize a grand jury and try defendants indicted thereby violated the Constitution.

The substance of appellant's argument is that said § 6081, of the Code, impinges Sections 13 and 43 of the Constitution; the first, in that a compliance with its provisions necessitates a delay of twenty-four hours before the court or officer to whom the application is made for the issuance of a temporary injunction may consider the merits of the application, and this is such delay as is prohibited by said section 13 which provides: "That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay."

This insistence is contrary to the dominant thought expressed in that section of the Constitution, *"a remedy* by due process of law," which guarantees, not only to the complaining party, but to his adversary the right to notice and hearing.

The argument further is that the court of chancery as it existed in England, and as established by the Constitution, was clothed with a sound judicial discretion in granting

injunctions with or without notice; that the statute intrenches this discretion and in its enactment the Legislature was attempting to exercise judicial power in violation of § 43 of the Constitution.

We do not doubt that courts of equity as they now exist in Alabama have and may exercise such discretion in the absence of statute.

However, it is a matter of history that prior to the adoption of the Constitution of 1868, and before the creation of the State and the adoption of the Constitution of 1819, the court of chancery was a creature of the Legislature, first of the Mississippi territory, and thereafter of the General Assembly of Alabama, in the exercise of the power conferred by § 8 of Article 5 of the Constitution of 1819, which provides: "The general assembly shall have power to establish a court or courts of chancery, with original and appellate equity jurisdiction; and until the establishment of such court or courts, the said jurisdiction shall be vested in the judges of the circuit courts respectively: Provided, That the judges of the several circuit courts shall have power to issue writs of injunction, returnable into the courts of chancery."

These provisions were carried forward in the Constitution of 1861 as § 7 of Article 5, and in the Constitution of 1865 as § 7 of Article 6.

The Constitution of 1868, § 1, Article 6, provided that: "The judicial power of the State shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, Circuit Courts, Chancery Courts, Courts of Probate, such inferior Courts of Law and Equity, to consist of not more than five members, as the General Assembly may from time to time establish, and such persons as may be by law invested with powers of a judicial nature."

And § 7 of the same Article provided: "The General Assembly shall have power to establish a Court or Courts of Chancery with original and appellate jurisdiction. The State shall be divided by the General Assembly into convenient Chancery Divisions, and the Divisions into Districts; and for each division there shall be a Chancellor, who shall, after his election or appointment, reside in the Division for which he shall have been elected or appointed."

The Constitution of 1875 carried forward these provisions as pointed out by the court in State ex rel. Winter v. Sayre, supra, and § 8, article 6, provided: "A Chancery Court shall be held in each district, at a place to be fixed by law, at least once in each year." [Italics supplied].

The present Constitution contains similar provisions, and § 148 provides that: "The legislature may confer upon the circuit court or the chancery court the jurisdiction of both of said courts." This was accomplished by Act No. 217, approved August 16, 1915, Acts 1915, pp. 279, 280, and the chancery court, and the office of "Chancellor" glorified by the common law, "as the keeper of the King's conscience and the great seal," as the result of a Legislative Act, passed out of the picture in Alabama, and became a matter of history. See Tuscaloosa County v. Shamblin, 233 Ala. 6, 169 So. 234.

The exercise of judicial power, and its application to private rights, without reference to time, place and notice, as a general rule, is inconsistent with our "general jurisprudence," and is not adapted to our "institutions" and form of government, and from the beginning of organized government in the territory, now constituting the State of Alabama, it has been recognized that the fixation of the time and place, and prescribing the character of notice, and the procedure, in respect to the exercise and application of such power, are matters committed to and resting within the competence of the Legislature, which possesses all the powers of the British Parliament, except as limited by the State and Federal Constitutions.

The statutes of the Mississippi territory, Digest of 1807, dealing with "Judicial Proceedings," provided: "That the said territorial judges shall hold at the place which is or may be established by law, for holding the sessions of the general assembly, a court of record to be called and styled 'the supreme court of the Mississippi territory;' and said judges shall moreover hold a court of record, to be called and styled 'circuit court of the county of (naming the county)' twice in every year, in each of the counties of Wilkinson, Adams, Jefferson and Claiborne, at the places appointed by law for holding the county courts in the said counties respectively: Provided however, That it shall not be the duty of the judge of the Washington district to attend either of the said courts." [Statutes Miss. Ter. p. 107 § 8. Italics supplied].

Section 43, p. 123: "And be it further enacted, That the said supreme court, and the said superior court for the district of Washington, shall also be and act as courts in chancery in the said counties of Wilkinson, Adams, Jefferson and Claiborne, and in the district of Washington respectively: and shall have and exercise all the power, authority and jurisdiction incident to courts of chancery, and may ordain and establish all necessary rules for the orderly conducting of business in equity, and for hearing and taking orders on interlocutory matters in vacation."

Section 45 provides for the issuance of writs of injunction and ne exeat, § 46 for process, § 47 for its issuance, and § 48 for its service.

By the statutes embodied in Clay's Digest, under the title "Judicial Proceedings in Chancery," elaborate provisions are made for time and place of exercising the power of the court of chancery, prescribing the mode of procedure, change of venue, regulating the issuance of injunctions, and prescribing notice and hearing for dissolution of same.

Many of these statutory provisions have been carried through the several Codes, and from time to time others have been added, and are now embodied in Chapter 267, section 6464 et seq., dealing with "Chancery Courts" and Chapter 304, section 8288 et seq., dealing with "Injunctions," including § 8312(1), quoted at the head of this opinion.

In the light of the history of our jurisprudence, both State and Federal, the conclusion is inescapable that the function of prescribing notice of the time and place for hearing in judicial proceedings is a legislative function, but, in the absence of statutes so providing, courts of general jurisdiction may provide, by rule, for such notice and process.

We are not without authority on this subject. 32 Corpus Juris, in the chapter dealing with injunctions, § 496, p. 305, 306, we find: "In General. By both statute and the general principles of equity a preliminary injunction or restraining order will generally not be granted until after an order to show cause or notice of the application has been given to defendant so that he may oppose the application by answer or by affidavits or otherwise."

This text is supported by a list of decisions from the Federal Courts running back to 4 Bliss, from the states of Arkansas, California, Colorado, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maryland, Michigan, Mississippi, Nebraska, Nevada, New Jersey, New York, Oklahoma, Pennsylvania, South Dakota, Washington, Wisconsin, England, British Columbia, Manitoba, Ontario, and Quebec.

The Mississippi court in Miles et al. v. Fink, 119 Miss. 147, 80 So. 532, 534, observed: "There is no principle of law more essential to justice and the protection of the rights of all parties concerned than notice and hearing before taking any judicial action that will affect a party in his person, property, or reputation."

And the Pennsylvania court in Kittanning Brewing Company v. American Natural Gas Company, 224 Pa. 129, 130, 73 A. 174, states the reason of the rule, towit: "The awarding of a preliminary injunction without notice is somewhat like judgment and execution before trial, for temporarily the defendant is *damnatus inauditus.*" [Italics supplied].

The same authority, 32 C.J. p. 306: "[§ 497] (2) Special Statutory Provisions. The statutes of some jurisdictions by implication permit the granting of a preliminary injunction without notice. By statute in some jurisdictions the general and ordinary business of a corporation, or the operation of a railway or of a municipal corporation, shall not be suspended until after due notice and a hearing, and an ex parte injunction granted in such cases contrary to the statute is void." Wilkie v. Rochester & S. L. R. Co. 12 Hun, N.Y., 242; 32 C.J. 306, § 497.

"The question of notice to defendant of an application for a preliminary injunction is largely regulated by legislation, which varies greatly in the different states." 2 High on Inj. (4th Ed.) § 1578.

These authorities, and the history stated above, are sufficient to sustain the holding that it was within the competence of the Legislature to enact said Section 8312 of the Code, and that it does not impinge any of the limitations of the Constitution.

Municipal corporations are agencies of government invested with limited legislative power, in respect to the preservation of public safety, peace and order, and the classification limiting the provisions of § 8312 to injunctions against municipal corporations is founded on reasonable distinction having just relation to the objects

318

to be accomplished by the statute. Board of Commissioners of City of Mobile et al. v. Orr, 181 Ala. 308, 61 So. 920, 45 L.R.A.,N. S., 575.

The appellant further contends that the court erred in discharging the injunction without affording the complainant an opportunity to correct the irregularity. Citing in support of this contention, Thorington v. Gould, 59 Ala. 461, and Jones v. Ewing et al., 56 Ala. 360, wherein the irregularity consists of granting the injunction without requiring the complainant to give bond, the irregularity in both cases waived by motion to dissolve. And, Woodward v. State, 173 Ala. 7, 55 So. 506, where the irregularity was want of sufficient verification.

The authority exercised by Judge Thompson in granting the fiat was a power conferred on him as a circuit judge, and that power in respect to injunctions against municipal ordinances is limited by the statute, to be exercised after notice and hearing. Moreover, the motion to discharge was filed and presented to the Judge of the circuit court, sitting in equity, on March 12th, and was set down for hearing March 26, 1938, and notice given thereof. During the fourteen days the motion to discharge was pending the complainant made no effort to cure the irregularity, which he might have done by giving the notice and renewing his application to the court.

The judgment here is that the court did not err in granting the motion and discharging the injunction.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.