25 So.2d 384

**RILEY et al. v. WILKINSON.**

6 Div. 362.

Supreme Court of Alabama.

Dec. 20, 1945.

Rehearing Denied April 4, 1946.

Horace C. Wilkinson, of Birmingham, for appellants.

Bradley, Baldwin, All & White, of Birmingham, for appellees.

**LIVINGSTON, Justice.**

This is an appeal from a decree rendered by the Circuit Court of Jefferson County, in Equity, overruling demurrers of J. P. Mudd, Mrs. Marguerite Mudd, Mrs. Dimmis Riley and the Western Grain Company, a corporation, to a petition, as last amended, filed on February 5, 1944 (known and referred to as the February 5th petition), by Mrs. Elizabeth W. Lanier, Edward Wilkinson, Jr., individually and in his capacity as executor of the will of Edward Wilkinson, deceased, and as trustee thereunder. The February 5th petition is another phase of the litigation growing out of the administration of the estate of Edward Wilkinson, deceased. See, Mrs. Dimmis W. Riley et al. v. Edward Wilkinson, Jr., et al., ante, p. 231, 23 So.2d 582; Edward Wilkinson, Jr., Ex'r, v. Bethea McCall, Co-Ex'r, ante, p. 225, 23 So.2d 577; Ex parte Mrs. Dimmis Riley, ante, p. 242, 23 So.2d 592; J. P. Mudd et al. v. Sterling Lanier, III, et al., ante, p. 363, 24 So.2d 550.

In 1943 the estate tax return was filed with the United States Government and the Government entered a deficiency estate tax assessment for an additional payment of some $52,000. On October 16, 1943, a petition was filed by the co-executors asking the court for instructions as to how to meet the payment of the deficiency assessment. Pending the hearing of the petition, a deputy collector seized certificate No. 38 for one hundred and fifty shares and certificate No. 41 for one share of the common stock of Western Grain Company, which certificates were issued to Edward Wilkinson, deceased, during his lifetime, and which were in the custody of Western Grain Company or Bethea McCall, as co-executor, at the time they were seized. These certificates had been previously surrendered to the Western Grain Company after the death of Edward Wilkinson, and before they were seized, in exchange for a new certificate numbered 71 for one hundred and fifty-one shares of common stock of Western Grain Company. Certificate No. 71 was issued to the co-executors and co-trustees at that time. Certificate No. 71 was never seized by the collector.

On January 20, 1944, and in the matter of the petition asking the court for instructions as to how to meet the deficiency assessment, the court entered a final decree which provided a plan for raising the money to meet the payment of the deficiency assessment through a sale of common stock of the Western Grain Company, and enjoined disposition of the stock on a basis at variance with the decree.

The presiding judge in his decree expressed the view that the stock should not be sold for less than $1100 per share, and that no more than forty-seven shares should be sold: all to raise a sum of between $50,000 and $55,000. That decree appears in full in the record on the appeal in Dimmis W. Riley et al. v. Edward Wilkinson, Jr., et al., beginning on page 92 and extending to page 102, and in M.R. No. 1 at page 285.

The same day the decree was superseded by a supersedeas bond and the next day Bethea McCall, a co-executor, and Mrs. Mudd entered into a contract by which, among other things, Mrs. Mudd agreed to purchase one hundred and fifty-one shares of common stock of the Western Grain Company on a basis set out in the contract. It was to set aside and cancel this contract between McCall and Mrs. Mudd that the petition of February 5, 1944 (the petition now considered) was filed.

It is first insisted that Edward Wilkinson, Jr., and Mrs. Elizabeth Lanier have only a contingent interest in the trust estate generally as it shall exist on the day of distribution and no interest in the one hundred and fifty-one shares of stock itself, and that a remote contingent remainderman cannot maintain a petition to cancel a contract made by the executor of the estate of decedent.

The argument in support of that insistence was refuted, and a like insistence denied in another phase of this same litigation, and we see no good reason to repeat here what was there said. See, J. P. Mudd et al. v. Lanier, ante, p. 363, 24 So.2d 550.

■ Under analogous principles Edward Wilkinson, Jr., as executor and trustee, has a right to maintain the instant petition.

The features of the decree of January 20, 1944, which seem to be proper to mention are as follows:

In paragraph numbered "Fourth" thereof, that: "The executors are hereby authorized and directed to sell a sufficient number of shares of the common stock of the company held by the estate of the decedent to yield an amount not less than $51,700, and not more than $55,000, the sale to be made in the following manner: at 11 o'clock A. M., on Friday, January 21, 1944, the executors shall offer said stock for sale in this court in the presence of the special judge, and sell the same to the highest and best bidder for cash. The highest and best bidder shall be the person who offers the highest price per share for such stock, unless two or more bidders offer the same price per share, in which case the bidder who offers to buy the larger number of full shares (within said limit as to maximum price) shall be deemed the highest and best bidder. No fractional share shall be sold." And in the "Seventh" paragraph thereof that: "If this decree is superseded or if the operation of section fourth, fifth and sixth hereof, or any material part thereof is otherwise stayed or suspended, or if either executor fails or refuses to join in the execution of said sections fourth, fifth and sixth, or any material part thereof, then in any such event, this decree shall be without prejudice to, and shall not be construed to prevent, the exercise of any power or authority conferred by the will of the decedent upon the executors, as executors of the will of the decedent or as trustees thereunder or both, or upon either of said executors and trustees, in whatever capacity he or they may act, or any power or authority which the executors and trustees or either of them may enjoy or exercise under the law regulating the administration of estates and trusts in the absence of express power conferred by the will or by decree of this court, in order to enable them, or either of them, to deal with the emergency situation now confronting the estate, with respect to said estate taxes and assessments. * * * Nevertheless, the said executors and trustees, to-wit, Bethea McCall and Edward Wilkinson, Jr., are, and each of them separately is hereby forever enjoined from doing any act, acting jointly or alone, directed towards accomplishing the purpose of raising the funds with which to pay said jeopardy assessment and from making any announcement sale, loan or agreement for such purpose upon any terms more favorable, in case of private sale, than those set forth in sections fourth, fifth and sixth." And in the "ninth" paragraph thereof, that: "This decree shall be effective at 11 o'clock A. M. on January 21st, 1944, unless prior thereto the same shall have been superseded. In case Mrs. Marguerite W. Mudd desires to supersede this decree, she may do so upon making a supersedeas bond with the surety hereinafter named or other surety satisfactory to the register in the penal sum of $150,000. * * * In the event the guardian of Mrs. Dimmis Riley, J. P. Mudd, Jr., or either or all of the minors, decide to supersede this decree, the register may accept a bond signed by Joseph P. Mudd and Mrs. Marguerite W. Mudd, as sureties."

The questions here involved are controlled by the further question of whether the decree was operative in the respect here material after a supersedeas appeal had been taken by Mrs. Riley under the provisions of the decree we have copied, and therefore whether the court had authority to give directions to the executors effective after such appeal.

The instant petition alleges that on January 20, 1944, an appeal was taken from that decree by the execution of a supersedeas bond as provided in the decree. No allegation is made that Mrs. Mudd or McCall joined in the appeal or executed a supersedeas bond. It is alleged that Bethea McCall executed an instrument in writing, signed by him as one of the executors

of the estate of Edward Wilkinson, Sr., deceased, for the estate and for him and Edward Wilkinson, Jr., as executors of the estate, whereby he undertook to sell, transfer, and assign to Mrs. Marguerite Mudd one hundred and fifty-one shares of the common stock of the Western Grain Company, owned by Edward Wilkinson, Sr., deceased, in his lifetime for the sum of $105,700, which is $700 per share. This contract appears to be in violation of the injunction contained in the decree of January 20, 1944, if that injunction was in effect at the time the contract of sale above mentioned was entered into.

*Meaning of the Decree as Here Material.*

■ We take the provision in the decree of January 20, 1944, that it shall be effective at 11 o'clock A. M. on January 21, 1944, unless prior thereto it shall have been superseded, to mean that the sale so ordered shall not be conducted until then, so that the parties shall have until that time in which to appeal by supersedeas and thereby suspend the sale, but that the effective date of the prohibitory order as elsewhere fixed is not deferred. This we think is manifest from a consideration of all the features of the decree.

■ By the provisions of section "seventh" of the decree, as we have copied it, if it is superseded, the executors are not thereby precluded from exercising any of their powers to enable them to deal with the emergency situation then confronting the estate. That meant obviously to raise money to relieve the burden of the estate tax. But the injunction construed in that connection means to prohibit the executors from selling any stock for such purpose on terms more favorable (to the purchaser, we suppose) than as set forth in sections fourth, fifth and sixth of the decree, construed in the light of its other features. We take that all together to mean that the auction sale as ordered in paragraph fourth is suspended until January 21, 1944, at 11 o'clock A. M., and if superseded it shall remain suspended pending the supersedeas, but that though the decree is otherwise fully suspended, the executors may exercise such valid authority as they possess to sell stock to meet the deficiency tax provided that in doing so they shall observe substantially the terms set out in paragraphs fourth, fifth and sixth, supra, and, as construed in the light of what is previously expressed in the decree, may sell forty-seven shares of common stock at a minimum of $1100 per share, but not more shares than enough "to yield an amount not less than $51,700.00, and not more than $55,000.00."

■ It does not purport to authorize a sale made by McCall, if contrary to his authority under the power conferred by the will or statute. To determine that authority, not necessary for present purposes, since the validity of the contract for that reason is not here involved, the will must be construed as to whether that power is discretionary, and therefore limited to the executors named in the will, and if so that it did not vest in one substituted by the court. Tarver v. Haines, 55 Ala, 503; Marks v. Tarver, 59 Ala. 335; Anderson v. McGowan, 42 Ala. 280; section 90, Title 47, Code; Hinson v. Williamson, 74 Ala. 180; Robinson v. Allison, 74 Ala. 254; Braley v. Spragins, 221 Ala. 150, 157, 128 So. 149. We will not now undertake to construe the will in that respect.

The matter that concerns us now is the interpretation and effectiveness of the decree. The foregoing interpretation of the decree is we think correct.

*Power of a Court of Equity Administering an Estate.*

■ When an administration of the estate is pending in that court, there are many matters to be done by trustees and executors, which should be done under the eye of the court, although authorized by the will. Perry on Trusts, section 511, page 860; Sanderson v. Gabriel, 246 Ala. 493, 21 So.2d 256–262.

■ The broad powers of the trustee are said to be so changed by the removal to equity that they must generally have the sanction of the court in their exercise. Perry on Trusts, section 474, page 807. We are not here concerned with the full extent of these broad terms.

■ The jurisdiction of the court to direct the manner in which a power of sale vested by the will in the executor shall be exercised results from the general superintendence over it which a court of equity possesses when an estate is being administered in it. Compare, Johnson v. Porterfield, 150 Ala. 532(2), 43 So. 228.

■ Moreover, there was objection by some of the beneficiaries to any sale of stock, and the court was called upon to determine whether a loan should be effected

or a sale made. The court could make that choice, though the executors could not effect a loan without such authority.

### Effect of the Supersedeas Appeal.

We do not think that the court exceeded his power in deciding upon a sale and in putting a limitation on the executors in the exercise of such authority as may have been conferred by the will, since the administration was pending in the court of equity, although the mandatory directions of the decree may have been superseded on appeal. The executors are officers of the court (33 C.J.S., Executors and Administrators, § 3, note 26, page 879), and were subject at all times to the orders of the court. A restrictive order made under this authority of the court may not be nullified by a supersedeas appeal. Compare, Ex parte Wright, 225 Ala. 220, 142 So. 672 [12 and 13], except by a statute which so provides.

We think the trial judge in rendering the decree of January 20, 1944, contemplated that a supersedeas, such as was executed and authorized by him, would suspend the auction sale directed in the decree, and he undertook to make an order restricting the executors as to their authority in that contingency. The theory of the court seems to have been well founded insofar as to conclude that although the decree may be superseded, the executors were still subject to his orders made prior to the supersedeas, fixing a restriction on their power which would bind them notwithstanding there was a suspension of the decree in other respects by the supersedeas. This does not conflict with our statutory system providing for supersedeas appeals, as we will undertake to show.

Section 795, Title 7, Code, authorizes the judge to fix a supersedeas bond if the decree be only for the performance of some act or duty or the sale of property, etc. It does not in terms make provision for a supersedeas when the decree merely prohibits an act to be done, neither does any other statute. Compare, Garrison v. First National Bank, 233 Ala. 687, 173 So. 88. That opinion notes a change in the language and meaning of this statute since its early enactment, and since the opinion in Montgomery Gas Light Co. v. Merrick, 61 Ala. 534.

It was also there pointed out that an appeal from a judgment when a statute does not require a supersedeas bond to effect a suspension, ordinarily suspends it without such a bond. Ex parte Cudd, 195 Ala. 80, 70 So. 721. The purpose of sections 793, 794 and 795, Title 7, Code, is to prevent the effect of a suspension by an appeal unless a supersedeas bond is given, applicable to the various situations described in them, each respectively. So that when, as here, there is a decree which in part does not come within the terms of either of those statutes, that feature of the decree is controlled by the law applicable without them. Let us assume that the supersedeas given under section 795, Title 7, supra, had the effect of a suspension of the auction sale, for that was for the "performance of [an] act," and a sale of property. It does not follow that the appeal suspended the restrictive features of the decree contrary to its terms.

It is well settled that an injunction which is prohibitory in character is not stayed or superseded by an appeal from the order granting the injunction and the supersedeas bond, except as provided by statute, does not have the effect of authorizing the doing of the act or thing enjoined pending the appeal. High on Injunctions, 4th Ed., 1698; 3 Amer.Jur. 205, section 558; 73 A.L.R. 710; 4 C.J.S., Appeal and Error, § 632, footnote 38, pages 1116, 1117; Collier v. State, 241 Ala. 459, 3 So.2d 17; City of Decatur v. Meadors, 235 Ala. 544, 180 So. 550.

Where there is an order granting such an injunction and it is dissolved on motion, and an appeal is taken, the statute authorizes the trial judge to reinstate it pending appeal, and on his refusal to do so, a judge of this Court may make the order. Section 1062, Title 7, Code.

And when a prohibitory injunction is sought, and it is denied by the trial court, and complainant contemplates an appeal, the trial court may order the continuance of a status pending the appeal and make such restraining orders as may be necessary to preserve the rights of the parties. 4 C.J.S., Appeal and Error, § 621, note 52 page 1106; 3 Amer.Jur. 206, section 558, notes 12 to 15. And if the trial court fails or refuses to do so, this Court has such power after the appeal has been taken. Alabama Power Co. v. City of Scottsboro, 238 Ala. 230(23), 190 So. 412; 4 C.J.S., Appeal and Error, § 621, note 50, page 1106.

In our opinion the feature of the decree made to control the officers of court

pending appeal so as not to cause irreparable injury in its opinion was not ineffective for that purpose, nor void for uncertainty.

The case of Sharp v. Edwards, 203 Ala. 205, 82 So. 455, is to the effect that when a judgment has been superseded on appeal the trial court cannot proceed to enforce it, but it is transferred to the appellate court, and the trial court cannot then set aside the judgment under the four months statute, and therefore pending such appeal a court of equity could not do so on general equitable principles. The decision made no declaration that a statutory supersedeas was effective to permit that to be done after its execution, which was prohibited by an order of the court to be done pending appeal.

■ The petition for instructions by the executors need not expressly ask for the injunction. The prohibitory order was directed to the conduct of petitioners as part of the instructions which they sought. It need not pray for prohibitory injunction against their own conduct to support a decree prohibiting them from making a sale of the stock except in a particular manner. The petition invoked the power of the court for instructions as to what they should do, and therefore as to what they should not do, and the manner of its doing.

■ The contract of January 21, 1944, between McCall and Mrs. Mudd is violative of the prohibitory injunction of January 20, 1944, and must be set aside and held for naught.

The trial court's ruling on the demurrers coincides with the foregoing, and is due to·be, and is affirmed.

Affirmed.

All the Justices concur.