41 So.2d 641

**RILEY et al. v. BRADLEY.**

6 Div. 672.

Supreme Court of Alabama.

April 22, 1948.

Rehearing Granted July 31, 1948.

Further Rehearing Granted April 14, 1949.

Rehearing Denied May 26, 1949.

284

J. P. Mudd, of Birmingham, for appellants.

White, Bradley, Arant & All, of Birmingham, for appellee.

FOSTER, Justice.

This suit is collateral to others relating to the administration of the estate of

Edward Wilkinson, Sr., deceased, who died November 6, 1941, leaving a widow and four children, naming two of them, Edward Wilkinson, Jr., and Elizabeth. Wilkinson Lanier, executors of his will. Much litigation has been conducted in respect to various aspects of their controversy. Much of it has been collateral to the main issues. Such is the instant case. Wilkinson v. McCall, 247 Ala. 225, 23 So.2d 577; Riley v. Wilkinson, 247 Ala. 231, 23 So.2d 582; Ex parte Riley, 247 Ala. 242, 23 So.2d 592; Mudd v. Lanier, 247 Ala. 363, 24 So.2d 550; Riley v. Wilkinson, 247 Ala. 579, 25 So.2d 384; Mudd v. Wilkinson, (Memo.) 247 Ala. 699, 23 So.2d 602.

The deceased had been the principal stockholder of Western Grain Company, which had proved to be a very successful business. He had created a living trust for his wife and each of his children, respectively, consisting of shares of stock in said corporation. When he died, he owned, apart from those trusts, one hundred and fifty-one shares of the common stock, which he placed in a trust created by his will for the benefit of his widow and four children, share and share alike. The Internal Revenue Department levied an estate tax. The executors filed a petition in equity, to which the estate had been removed, for instructions as to how best to raise the money to pay that tax. This is known as the petition of October 16, 1943. The court made a decree which was the subject of one of the appeals to this Court. Riley v. Wilkinson, 247 Ala. 231, 23 So.2d 582. But that decree not having been complied with, but superseded on appeal, the Revenue Department having attempted to seize the one hundred and fifty-one shares for sale to satisfy the tax, proceeded to make a sale of thirty-four shares at public outcry to Mrs. Lanier, one of the heirs who was not then a coexecutor, having previously resigned and McCall had been appointed and qualified as such. Mrs. Lanier's bid and purchase of the stock was for an amount substantially equal to the assessment which had been made. Edward Wilkinson, Jr., as coexecutor is alleged to have united in the sale to her. Mrs. Mudd and Mrs. Riley, two of the children, had lined up against Edward Wilkinson, Jr., and Mrs. Lanier. The former two contended that the sale was invalid for various reasons, not necessary here to discuss.

On June 29, 1944, a petition was filed in the matter of the estate by Edward Wilkinson, Jr., as a coexecutor by Lee C. Bradley, Jr., as his attorney. This is referred to as the "petition of June 29." It sought to authorize a transfer to Mrs. Lanier of the thirty-four shares of stock alleged to have been bought by her, Mrs. Lanier filed a cross bill by Mr. Bradley, as her attorney, seeking to obtain from the estate the thirty-four shares of the Western Grain Company, or recover the $50,320, paid by her for them, which went to satisfy the federal tax claim, and for that purpose to be subrogated to the lien of the United States, and be paid said sum of $50,320, out of the estate. Mrs. Mudd and Mrs. Riley were made parties to the petition and cross bill, and are now actively defending against them. The instant petition is by Mrs. Mudd and Mrs. Riley against Mr. Bradley to enjoin him and his partners from prosecuting against the executors of the will of Mr. Edward Wilkinson, Sr., deceased, the claim of Mrs. Lanier for the thirty-four shares or for $50,320, in the alternative, and from representing, advising or counseling Mrs. Lanier or Edward Wilkinson, Jr., as executor in connection with the assertion by Mrs. Lanier of her said claim against said estate or giving advice, etc., in that connection.

A temporary injunction was issued without notice and hearing under section 1054, Title 7, Code. Thereupon, Mr. Bradley moved to *discharge* the injunction. From a decree sustaining that motion and discharging the injunction, petitioners, Mrs. Mudd and Mrs. Riley, prosecute this appeal. Sections 757, 1052, Title 7, Code.

In making his motion for discharge much of the history of the litigation shown by the records of the circuit court and of this Court was referred to. That includes the petition of "May 15, 1947" by these petitioners and three children of Mrs. Mudd to secure the removal of Edward Wilkinson, Jr., as a coexecutor and cotrustee of the living trusts. One ground set up is that Edward Wilkinson, Jr., and his attorney, Mr. Bradley (respondent

here) are aiding, assisting and abetting Mrs. Lanier in her efforts to secure the thirty-four shares, above mentioned. That Mr. Bradley could not *serve petitioners, as beneficiaries of the will,* because he is also representing Mrs. Lanier in her efforts to recover said thirty-four shares of stock over the active opposition of petitioners. That he represents conflicting interests, and the petition of May 15th sought injunction against Edward Wilkinson, Jr., and his attorneys from prosecuting, maintaining or continuing any and all suits in his name or his behalf as a coexecutor or co-trustee, including the petition of June 29th. It is then alleged in the motion to discharge, after much other detail, that the circuit court, in equity, entered a decree in which it refused to remove Edward Wilkinson, Jr., as coexecutor and co-trustee, and seems to have made no specific ruling on prayer for injunction, referred to above. From that decree, appeal is pending to this Court, as alleged. The court removed McCall as coexecutor and co-trustee, and appointed the First National Bank of Birmingham in his place, and as such becomes a party to the petition of June 29th, and it becomes its duty to protect the estate in respect thereto.

It would therefore appear from such records that the question here involved was in substance acted on by the circuit court, in equity, on the petition of "May 15," supra, now on appeal to this Court, though it has not actually reached the point of submission, nor has the record been received. It is insisted that the temporary injunction here was ordered by a judge who had no knowledge of the history of the litigation, and that when that was brought to the attention of the judge on the motion, he discharged it properly on the theory that the matter had been acted on and that it was improvidently issued, and that therefore it was an irregularity which sustains a motion to discharge rather than one to dissolve.

█ Since the substance of the matter involved on this appeal had been heard and determined by one branch of the trial court before the petition in the instant case was filed, we think that another branch of the trial court properly discharged the temporary injunction, which it had ordered as having been improvidently granted in ignorance of such prior determination. Sellers v. Valenzuela, 249 Ala. 620, 32 So.2d 520, 525; Acker v. Green, 216 Ala. 445, 113 So. 411; Barnett v. State ex rel. Simpson, 235 Ala. 326, 179 So. 208. Whether it was also considered and determined in other proceedings, as contended in the motion to discharge, need not be considered.

█ We also think it was properly discharged if the petition on its face, together with other records referred to, show that petitioners are not the appropriate parties to raise the question, as presented. Skyline Missionary Baptist Church v. Davis, 245 Ala. 455, 17 So.2d 533. The principle seems to be fully established that only a party who sustains the relation of client to an attorney, who undertakes to represent conflicting interests, may be entitled to object to such representation for that reason alone. 7 Corpus Juris Secundum, Attorney and Client, § 47, page 827, note 20; Otis & Co. v. Pennsylvania R. R., D. C., 57 F.Supp. 684(4); Forecki v. Kohlberg, 237 Wis. 67, 295 N.W. 7, 10; Ferguson v. Alexander, Tex.Civ.App., 122 S.W. 2d 1079, 1081; Harvey v. Harvey, 202 Wis. 553, 231 N.W. 580, 583; Michel v. McKenna, 199 Wis. 608, 227 N.W. 396.

This injunction petition alleges in the ninth paragraph that respondent Lee C. Bradley, Jr., has occupied continuously the relation of attorney for one of the executors and trustees, and that he "has *probably obtained information and knowledge* which your petitioners *verily believe enables him,* if presented to this Court, to defeat the said claim of Mrs. Lanier," and in paragraph thirteen, that petitioners are seriously handicapped in presenting an adequate defense to said claim of Mrs. Lanier, because some of the effective evidence of its invalidity is in the exclusive possession of Mr. Bradley. (What evidence or its nature is not alleged.) That at the instance of petitioners by their attorney J. P. Mudd, they obtained an order from the court requiring him to furnish such information as he has concerning said matters, and thereby obtained certain information,

but they *believe* that he has withheld information which would satisfactorily establish the complete lack of legal and moral right on the part of Mrs. Lanier to said thirty-four shares of stock. Also in paragraph twelve that Mrs. Lanier, Edward Wilkinson, Jr., and petitioners are equitable tenants in common of the property of decedent, including the thirty-four shares, and that their attorney owes them the duty to take no advantage of them by seeking to obtain a tax title to any of its assets. (He is not shown to be the attorney for petitioners.) No effort was made by them as such tenants in common to enforce an equitable right to share in such purchase by a cotenant (Gordon v. McLemore, 237 Ala. 270, 186 So. 470; Bailey v. Bond, 237 Ala. 59, 185 So. 41); but they content themselves with using their resources to prevent the enforcement of the purchase by Mrs. Lanier. Also (paragraph eight) they claim that in a court of equity, the beneficiaries of a trust are the beneficial and substantial owners, and that Bradley, in representing Edward Wilkinson, Jr., as coexecutor, was under a duty to the beneficiaries of the estate to serve said estate with fairness, impartiality, fidelity and loyalty to the exclusion of all adverse and conflicting interest. There is much more such vague and indefinite allegation.

But none of it shows that Bradley stands in relation to them as attorney and client. He is attorney for the executor and trustee, not petitioners as beneficiaries. The beneficiary is affected, and may hold the trustee responsible for loss on account of bad faith in the employment of an attorney, or failure to do his duty to contest said claim. Ordinarily the executor or trustee has full authority to choose his attorney. Section 63, Title 46, Code; compare, Ex parte Riley, 247 Ala. 242(12), 23 So.2d 592; Strumpf v. Wiles, 235 Ala. 317, 179 So. 201; Ex parte McLendon, 212 Ala. 403, 102 So. 696; 65 Corpus Juris 722, section 585.

This is personal property in dispute, section 30, Title 10, Code, and the legal title is in the executors. Sovereign Camp, W. O. W. v. Snider, 227 Ala. 126, 148 So. 831.

But the beneficiary is the equitable owner of trust property,—Ex parte Jonas, 186 Ala. 567, 64 So. 960. On the same principle, the property of a corporation is treated in equity as owned by the stockholders. Autauga Co-operative Leasing Ass'n v. Ward, 250 Ala. 229, 33 So.2d 904; First Nat. Bank v. Winchester, 119 Ala. 168, 24 So. 351, 72 Am.St.Rep. 904.

But by reason of such equitable interest, there is no privity between them and attorneys employed by the trustee or corporation. Their right to be heard is derivative and in the right of the trustee. They have no more right to interfere with the employment of attorneys representing the trust or corporation than with any other contract or transaction of the trustee or corporation. Their rights are controlled by well defined principles.

A stockholder may come into equity and secure relief for the benefit of the corporation when its officers and directors and majority stockholders refuse to proceed or when they are themselves the parties against whom the right in favor of the corporation exists. Van Antwerp v. Cooke, 230 Ala. 535, 162 So. 97; Gettinger v. Heaney, 220 Ala. 613, 127 So. 195; Hagood v. Smith, 162 Ala. 512, 50 So. 374; Farmer v. Brooks, 213 Ala. 137, 104 So. 322; Glass v. Stamps, 213 Ala. 95, 104 So. 237; Mudd v. Lanier, 247 Ala. 363(18), 375, 24 So.2d 550.

And in case a trustee refuses to perform his duty to protect the trust, the beneficiaries may sue in equity to protect their rights, in the right of the trustee, but only when that may be necessary to protect their interests. 65 Corpus Juris 864, section 78.

In general, the personal representative must take action to secure or protect the personal estate of decedent, and he is the only necessary party to represent the personal estate. Blackburn v. Fitzgerald, 130 Ala. 584, 30 So. 568. But the distributees may invoke the protection of a court of equity, and be permitted to sue or defend in the right of the personal representative to protect their secondary rights when his position is antagonistic and damage will probably result to them.

They are not required to surrender their property interest for a mere right of action on the administrator's bond. Gilchrist v. Gilchrist, 223 Ala. 562, 137 So. 406; Duggar v. Tayloe, 60 Ala. 504, 517; Faulk v. Money, 236 Ala. 69, 181 So. 256; Mudd v. Lanier, 247 Ala. 363(11), 373, 24 So.2d 550.

These petitioners are parties in the proceeding which is in equity, in which Mrs. Lanier is seeking to obtain the thirty-four shares of stock, or the money paid by her for it which settled the tax claim, in which they in the instant case seek to enjoin Lee C. Bradley, Jr., from representing her because he is attorney for Edward Wilkinson, Jr., one of the executors. The petition alleges that Edward Wilkinson, Jr., is aiding Mrs. Lanier in securing the benefits of her claim. He evidently thinks her claim is just. He participated in the sale to her. It is apparent, as we have said, that petitioners, two of the heirs, are lined up against Edward Wilkinson, Jr., and Mrs. Lanier, the other two. Both sides of this contest are ably represented. There is no allegation of concrete fact to support a belief that the estate will sustain damage by the dual representation.

While this petition makes vague allegations of *belief* as to information Mr. Bradley has, which he has not disclosed, no importance can be attached to such form of allegation. But the facts remain that petitioners are parties in the suit which they claim involves their rights, and in which Mr. Bradley represents adverse interests. Being parties, they can and are apparently fully and completely protecting their rights. There is no reason to assume the First National Bank as coexecutor and co-trustee cannot and will not fully represent the interest of the estate and trusts in respect to these proceedings. Petitioners cannot interfere with the coexecutor in the selection of an attorney or force him to discharge his attorney by reason of adverse interest, unless they show that to retain him will probably result in damage to the estate. They do not stand in the shoes of the coexecutor with the absolute right to object to his attorney representing opposing interest. They can only come in on the principle that it is the duty of the

coexecutor as a trustee to make the objection and that his failure to do so will result in damage to the estate including their interest. Edward Wilkinson, Jr., personally has the same interest they have in that controversy. He has a right to his opinion that Mrs. Lanier's claim is just and ought to be recognized. Ex parte Riley, 247 Ala. 242(5), 23 So.2d 592. Petitioners have the right to an opposing view. Therefore, petitioners for and in the interest of the estate may contest with Mrs. Lanier the justice of her claim. This is their derivative or representative right as beneficiaries of a trust, when the trustee refuses to make the contest. These petitioners are vigorously and intelligently, by able counsel, making that contest. Likewise, they have a right to act for and in the name of the coexecutor to object to the dual representation by Mr. Bradley of Mrs. Lanier and Edward Wilkinson, Jr., as coexecutor in that matter, provided only they make a satisfactory showing that injury will probably result to the estate if such dual representation continues, and have not waived the right to do so. Edward Wilkinson, Jr., as such coexecutor, could without other reason object to his attorney representing a conflicting interest. But the beneficiaries cannot make such objection in their personal right, because they are not clients of Mr. Bradley, but may do so derivatively on a sufficient showing that injury will probably result to the estate by a continuance of the dual representation. The petition in that respect makes vague and uncertain statements as to their belief or opinion. But there must be substantial matter alleged showing the probability of injury before a court will act upon it, where probability of injury is necessary as a condition to relief. So that the bill shows on its face that on the facts alleged, Edward Wilkinson, Jr., as coexecutor, is the one primarily entitled to require respondent to terminate his dual representation, without a sufficient showing of probable injury to result. Therefore, there was an irregularity in issuing the injunction at the instance of petitioners, and the motion to discharge it was properly granted. Skyline Missionary Baptist Church v. Davis, 245 Ala. 455(8), 17 So. 2d 533.

We have given no consideration to the question of whether the bank as a coexecutor and co-trustee can object to such dual representation of its associate.

And, as we have also noted, it was an irregularity to issue the temporary injunction in respect to a matter which had been decided in another suit, and from which an appeal had been taken.

The decree discharging the injunction was without error.

Affirmed.

GARDNER, C. J., and BROWN, LIVINGSTON, SIMPSON and STAKELY, JJ., concur.

LAWSON, J., concurs in result.

## On Rehearing

GARDNER, Chief Justice.

Upon reconsideration of this cause pending application for rehearing, the writer prepared an opinion expressive of his views and dissenting from the then prevailing opinion. Upon the cause coming on to be heard in consultation on the rehearing a majority of the court adopted the opinion so prepared, and it is as follows:

Complainants are beneficiaries of the trust estate. Edward Wilkinson, Jr., co-executor and co-trustee, occupied to these complainants a fiduciary relationship. Defendant Bradley's connection began, according to averments of the bill, in May, 1942, his firm having been employed by said Wilkinson to represent and advise him as co-executor and co-trustee. I am unable to agree that these complainants are not appropriate parties to institute this proceeding; and I do not read the authority cited, Skyline Missionary Baptist Church v. Davis, 245 Ala. 455, 17 So.2d 533, as holding to a contrary theory. True there is no direct relationship of attorney and client existing between these complainants and attorney Bradley, yet as beneficiaries to the trust, and as representing the trustee, he owes to these complainants a positive duty of fidelity and loyalty, and it is clear enough the said trustee acted in all matters under his advice and direction, and

would not himself institute any such suit. But in any event, if, as indicated, the suit should have been brought in the name of the trustee for the benefit of these complainants, that was a matter which could be well supplied by an amendment, which is contemplated in a motion to discharge an injunction as distinguished from the motion to dissolve. The motion to discharge, as is well understood, rests upon irregularities in the original issuance of the injuncton, and as a general rule the complainant is given an opportunity to amend the bill. Barnett v. State ex rel. Simpson, 235 Ala. 326, 179 So. 208; Acker v. Green, 216 Ala. 445, 113 So. 411; Jones v. Ewing, 56 Ala. 360; Grooms v. Brown–Marx Co., 236 Ala. 655, 184 So. 698; Burch v. Burch, 231 Ala. 464, 165 So. 387; 43 C.J.S., Injunctions, § 241, pages 980, 981.

The ruling here permits the defendant to in effect gain a dissolution without questioning the equity of the bill or being required to file an answer. Indeed, the motion to discharge does not contemplate an examination into the merits of the case. The present minority opinion indicates that the decree on the question of removal of Wilkinson as co-trustee and co-executor on appeal to this court presented the substance of what is involved in this record. The question of a restraining order was not there determined, and I am unable to see wherein this record discloses that that appeal would in any manner affect the present one. Whether or not the trial judge in issuing the writ was cognizant or ignorant of this decree does not appear from this record, nor can I see that it would be material one way or the other.

Of course, it is clear enough that the bill has equity (4 Pomeroy Eq.Jur., 5th Ed., § 1339), and in my opinion the complainants were the proper parties to institute the suit, the bill disclosing, as it does, the close relationship between Wilkinson, the co-trustee, and these complainants and the fiduciary relation of Mr. Bradley to all of them. 1st Thornton, Attorneys at Law, §§ 174–5. Indeed, the minority opinion, as I read it, recognizes the right of these complainants to bring such a suit in the name of the coexecutor to object to the dual relationship

on defendant Bradley's part, provided it is satisfactorily shown that injury will result if the dual representation continues.

We are not here considering the allegational sufficiencies, vel non, of the bill of complaint, but merely whether or not it shows equity on its face and we think it sufficiently shows probable damage to the complainant by the dual relationship of Bradley, in attempting to represent conflicting interests to avert the discharge of the injunction. Whatever may have been the origin of the purchase of the 34 shares of common stock by Mrs. Lanier, and however well intentioned defendant Bradley may have been in assisting her for this purpose to procure a loan by the use of his own personal assets, and whatever may be said in regard to Mrs. Lanier's rights to reimbursement for the money so expended in the purchase of the stock, yet it very clearly appears that at the time of filing this bill and the hearing of the motion to discharge, the real purpose of securing and holding on to the stock held by Mrs. Lanier concerns a matter of control of the corporation, and a deprivation of the estate of said stock. That very clearly appears from the affidavit of Mrs. Mudd beginning on page 59 of the record in which her colloquy with defendant Bradley is disclosed, and in which he admitted that one of the efforts was to keep her, Mrs. Mudd, from getting control. And immediately following, in this same colloquy, defendant was asked by Mrs. Mudd whether or not he was then representing her in such effort, to which he replied: "I am representing you as beneficiary under the will and the living trust," and stated in further reply that he thought he was so looking after her interest. It must be borne in mind, of course, that this defendant was then and has all along been the attorney for the trustee who accepted a fiduciary relation to these complainants as such trustee. And that as such attorney such relationship to the beneficiaries was acknowledged. Clearly enough this suffices for the purpose of this hearing.

Whether or not probable damages must be shown under the circumstances here disclosed, we need not stop to inquire, as probable damages, in our opinion, sufficiently appears. See, however, Boyd v. Second Judicial Dist. Court, 51 Nev. 264, 274 Pac. 7; Bryant v. McIntosh, 3 Cal. App. 95, 84 P. 440, 134 A.L.R. 1310, Notes; Barreda Corporation v. Ballenger, Tex. Civ.App., 116 S.W.2d 442; Slay v. Mary Couts Burnett Trust, Tex.Civ.App., 180 S.W.2d 480; Bogert on Trusts, Vol. 3, § 484; 12 Am.J. 680; Taylor v. Errion, 137 N.J.Eq. 221, 44 Atl.2d 356, 361; Overfield v. Penroad Corporation, D.C., 42 F.Supp. 586; United States v. Carter, 217 U.S. 286, 30 S.Ct. 515, 54 L.Ed. 769, 19 Am.Cas. 594; 1 Thornton, Attorneys at Law, §§ 174-5.

The rule of law here applicable is to be applied regardless of good intentions, or whether in fact any injury has resulted. It is considered a rule of sound policy and rigidly adhered to. 12 Am.J. 680. The fact that defendant may have acted with good intentions, as he sees it, does not affect the question of his duty to those beneficiaries of a trust of which he was attorney.

But I intend no extensive discussion. Whatever answer defendant may have to the bill presented might well have been disclosed by a motion to dissolve the injunction, but not that to discharge, a distinction which this court has long recognized. And though in some of our cases we have used the expression that the injunction was correctly discharged as being "improvidently" granted, yet an examination of these authorities will show that there was irregularity in the original issuance of the writ, and generally this irregularity appears upon the face of the proceeding. Illustrative is Acker v. Green, supra, where the proceeding disclosed on its face irregularities, in that the judge had no authority to order the injunction, and a like ruling was made when the writ was issued contrary to the statute, as in Rochell v. City of Florence, 236 Ala. 313, 182 So. 50.

The motion to discharge appears to be rested upon a statement in Daniels Chancery Practice page 1679 (to the effect that when an injunction was obtained on misstatement of facts the motion to discharge is the proper order.) In the note thereto is cited an old English authority of Angier v. May, 3 Eq.Rep. 488, where there was discrepancy in the statement of service in the order and that in the affidavit this was sufficient irregularity to justify a mo-

tion to discharge, which authority in itself, I must confess, does not appear to me to be of great force. The other authority cited in the note is the Wisconsin case of Haight v. Lucia, 36 Wis. 355, wherein the court observed that the complainant had grossly abused the process of the court, which in itself would have justified the court in *dissolving* the injunction.

It appears, therefore, these authorities are not here of material consequence.

But assuming that a misstatement of facts would justify a discharge rather than an order of dissolution, there was no proof of any verbal misstatement of facts. Counsel for complainants on the hearing moved that the trial judge recuse himself in order that he may be used as a witness to the effect no misrepresentation was made. The trial judge denied the motion and it was conceded no verbal misrepresentation was made. But it appears defendant insists the bill did not state the full history of this litigation which has continued for several years and consists of hundreds of pages of records. We know of no necessity for the bill to so detail all of this litigation. It presented a single question as to whether or not defendant, as attorney for the trustee, could also represent Mrs. Lanier in her insistence to hold on to the stock in the effort to prevent these complainants, who are also beneficiaries of the trust, from acquiring control. Any matter of defense to these averments might be presented on a hearing to dissolve the injunction by the answer and proof in support thereof as authorized by our statute. Title 7, § 1061, Code 1940. But the motion to discharge was an improper remedy and should not have been sustained.

Nor is it a matter of great consequence whether the order was issued without having it set down for hearing.

Whether the order should be made upon presentation of the bill or set down for hearing was entirely a matter within the sound discretion of the trial judge. Title 7, § 1054, Code 1940.

We conclude, therefore, that as the case now stands the injunction should not have been discharged and that the lower court erred in so ruling. It results, therefore, that the rehearing is granted, the judgment of affirmance set aside, and one here entered overruling the motion, re-instating the injunction and the cause remanded.

Rehearing granted; reversed, rendered and remanded.

LIVINGSTON, LAWSON and SIMPSON, JJ., concur.

BROWN, FOSTER and STAKELY, JJ., dissent.

### On Rehearing.

CARNLEY, Special Justice.

After due and careful consideration of the record and the questions involved on the appeal from the order discharging the injunction in this case, I am constrained to and do concur in the opinion of Justice Foster, which lead to the affirmance of the trial court's order discharging the injunction.

Application for rehearing filed August 14, 1948 granted; judgment of reversal set aside and judgment of affirmance first entered is reinstated.

BROWN, FOSTER, and STAKELY, JJ., and CARNLEY, Special Justice, concur.

LIVINGSTON, LAWSON and SIMPSON, JJ., dissent.

LIVINGSTON, LAWSON, and SIMPSON, JJ., deem it proper, in view of some argument on behalf of appellee pending consideration of the foregoing application for rehearing and in view also of the disability which prevented the Chief Justice from participation in the latter phases of the case, to make this brief response.

Appellee finds fault with certain statements contained in the opinion by the Chief Justice, in which opinion we concurred and which has now become a dissent. The criticism is leveled at certain references in the opinion to the fight for control of the corporation between the parties represented by the appellee on the one hand and the appellants (and perhaps

their attorney, also a stockholder of the corporation) on the other, and that the statements to which exception is taken contain factual inaccuracies constituting a reflection upon the appellee.

We think sufficient answer to the criticism is implicit in the opinion itself, which pointed out and reiterated the distinction between a motion to discharge an injunction, as here involved, and a motion to dissolve, and that a motion to discharge did not contemplate an examination into the merits of the case, but such a motion, to prevail, must be rested upon irregularities in the original issuance of the injunction. The opinion did not appraise the allegational sufficiencies of the bill, but only took account of whether, prima facie, the bill showed sufficient equity to avert the discharge of the injunction. As of course, it was not necessary, nor did we intend to enter upon, a determination of the proof, vel non, of the allegations. As indicating our view that the bill did show equity on its face, certain tendencies of allegation, and proof offered on the hearing, were noticed in the opinion, among them the factional fight for control. We thought this factional fight gave emphasis to the disparate interests of the parties the appellee is charged with representing and whether or not factually accurate, the tendencies as stated were legitimate inferences from the record before us. Indeed, the essential difference between us and our brothers constituting the ultimate majority view was not one of fact but of substantive and procedural legal principles.

Response to Application for Rehearing filed April 22, 1949.

BROWN, Justice.

Appellants' motion "to quash, vacate, expunge and annul that certain decree of this Court rendered April 14, 1949," and his application for rehearing are rested on two grounds: first that § 15, Title 13, Code of 1940, is unconstitutional, that the legislature was without authority to enact any such statute, and two that the disqualification as certified is rested on "current" illness and not on "prolonged illness of a chronic nature," and was made by the Chief Justice

who was without authority under the statute to certify his own illness and disqualification. Therefore, the appointment of Carnley as Special Associate Justice to serve in this case was void.

The statute provides: "When by reason of disqualification the number of judges competent to sit in a cause is reduced to six or to four, and there is equal division among them on any question material to the determination of the case, the fact shall be certified by the chief justice, or when he is disqualified by the judges sitting, to the governor, who shall thereupon appoint a member of the bar of the supreme court to sit as a judge of said court in the determination of said cause; and similarly when by reason of disqualification no one of the judges is competent to sit in a cause, or the number is reduced below four, the fact shall be certified by the chief justice, if he is competent to sit, or if not, by the judge or judges sitting, or if no one is competent, by the clerk of the court, to the governor, who shall thereupon appoint a number of members of the bar of the supreme court to constitute a special court of five members for the consideration and determination of such cause. The word 'disqualification,' as used in this section, being taken to include inability to sit by reason of prolonged illness of a chronic nature."

The effect of this statute is to create the office of special associate justice or special judge to sit in case of a tie between the judges who are qualified to sit in a cause and likewise where all of the justices are disqualified it creates a special court of five members for the consideration and determination of such cause to be filled by appointment of the governor of members of the bar of the court to act as such special court. This statute was so interpreted by the chief justice and the several justices of the court when they certified their disqualification and five special justices were appointed to decide the case of State Docks Commission v. State, 227 Ala. 521, 150 So. 537, and also in Abramson v. Hard, 229 Ala. 2, 155 So. 590; Cook v. Continental Ins. Co., 220 Ala. 162, 163, 168, 124 So. 239, 65 A.L.R. 921; and in other instances.

The appellants' contention, to state it more specifically, is that said section 15,

Title 13, Code of 1940, violates § 152 of the Constitution of 1901, which provides: "The chief justice and associate justices of the supreme court, judges of the circuit courts, judges of probate courts, and chancellors shall be elected by the qualified electors of the state, circuits, counties, and chancery divisions, for which such courts may be established, at such times as may be prescribed by law, *except as herein otherwise provided.*" [Italics supplied.]

The case of Ex parte Amos, 51 Ala. 57, is cited and relied on by appellants. That case was decided in 1874, declaring unconstitutional and void a statute providing for the selection of a special judge of the circuit court where the regular judge was disqualified to act. We quote the opinion:

"This application involves the construction of section 758 of the Revised Code, and a consideration of its validity under the present constitution of the State. (Constitution of 1868) The state constitution creates the state government, and it is wholly an instrument of limitations. The officers of the government thus instituted are the agents of the people, to execute its powers, *and the constitution is the warrant and the limit of their authority.* Smith's Comm. on State. & Const. Construction, p. 443, §§ 294 et seq. The Revised Code has never been adopted by the present government of the State, under the present constitution, as a whole; only such laws and parts of laws, as do not conflict with the constitution and laws of the United States, or with the constitution of this State, have been continued in force. See Acts 1868, p. 7.

"The section of the Code referred to is in these words: '758. When any judge of the circuit court is incompetent to try any case standing for trial, by reason of relationship to parties, or of having been engaged as counsel in the cause, or for any other reason, the parties to the suit must, when the same is reached for trial, nominate some attorney present in court, *who must preside as judge for the trial of such cause,* during that term; and if the parties fail promptly to make such selection, the clerk of the court must nominate the attorney, who shall preside over and try the cause at that term.' This law clearly makes the attorney, who presides at the trial thus appointed to be had, a 'judge for the trial of such cause during that term.' Then, he would have all the authority to manage and conduct the trial, according to the practice of the court, and enter on the minutes of the court such judgment as he may determine upon and consider, as a judge of the circuit court would be bound to do. It seems to me that no other logical inference can be drawn from the purpose and language of the law. Then, the question arises, can such a *judge,* under the present constitution, be created by the act of one of the parties to the suit, in opposition to the will of the other party, or by act of the general assembly of the State? This inquiry must be answered from the constitution itself. This instrument declares, that the judicial power of the State shall be vested in certain named officers, who are specially designated, and in 'such persons as may be by law invested with powers of a judicial nature.' Const. Ala. Art. VI, § 1. After creating the courts of the state government, the constitution directs, that the judge of these courts, except 'notaries public,' shall be elected by the people; and it also prescribes by whom vacancies shall be filled in the offices thus established. Const. Art. VI, §§ 11, 13. It is nowhere permitted to the legislature to elect or appoint any judicial officer or officers of the State, or to fill any vacancy in any judicial office. Nor is the legislative body empowered to authorize any person to discharge any of the duties of a judge of the circuit court. Such officer can only be elected by the people, or appointed to fill a vacancy by the governor, as directed in the constitution as above cited. State ex rel. Bull v. Snodgrass, 4 Nev. 524. A judge of the circuit court, with compulsory powers to hear and determine causes pending in a circuit court of this State, can only be created by election or appointment in the manner prescribed by the constitution of the State. Const. Ala. 1867, Art. VI, § 11; Acts Ala. 1870–1871, p. 17. It follows from this, that section 758 of the Revised Code is unconstitutional, and void * * *." [Italics supplied.]

▆▆▆▆▆ The opinion in Ex parte Amos, supra, is based on the concept that the legislature has no power except that expressly conferred by the constitution. This

concept is so contrary to the settled law that we need only refer to a few of our cases. As observed by Chief Justice Gardner, in one of our recent cases speaking of state legislative power, " * * * And it must be borne in mind also that legislative power is not derived from either the State or Federal Constitution. These are only limitations upon power. Apart from the limitations imposed by these fundamental charters of government, the power of the legislature has no bounds, and is as plenary as that of the British Parliament.

"Or to state it differently, all that the legislature is not forbidden to do by the organic law, state or federal, it has full competency to do. And in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a co-ordinate branch of the government. All of which is embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond a reasonable doubt that it is violative of the fundamental law. Gray v. Johnson, 235 Ala. 405, 179 So. 221; Walden v. City of Montgomery, 214 Ala. 409, 108 So. 231; Miller v. Marx, 55 Ala. 322, [332]." State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 334, 186 So. 487, 489, 121 A.L.R. 283. See also Casmus v. Lee, 236 Ala. 396, 183 So. 185, 118 A.L.R. 822.

Said § 758 of the Revised Code of 1867 declared unconstitutional in Ex parte Amos, supra, was challenged as unconstitutional in Alabama & Florida Railroad Co. v. Burkett, 42 Ala. 83, and the statute was there upheld as constitutional. The court observed:

"Constitutional provisions relating to the power of a State legislature are not grants of power, but limitations of power; and the rule in such cases is, that such provisions shall be strictly construed.—Fletcher v. Peck, 6 Cranch, 87 [3 L.Ed. 162]; Golden v. Prince, 3 Wash. C.C.R. 313 [10 Fed. Cas.No. 5,509]. The application of this rule of construction will show, as I believe, the correctness of the conclusion that there is no constitutional inhibition of the character named. I, therefore, hold the correct interpretation of the constitution to be, that the *general* judicial power of the State is to be exercised, as vested, by the judges of the several courts who have been chosen in the mode provided; that its exercise is to be in conformity to the rules of the common law, *and such regulations as may be prescribed by the legislature*; and that there is no limitation upon the power of the latter to provide a mode for the trial of such causes, as the regular judges, by the rules of the common law, may decline, or be incompetent to try. If the legislature had not such power as is last mentioned, it is obvious that there might be a failure of justice in many cases for the want of a competent tribunal to try them. The conclusion as to the constitutionality of the act in question is strengthened by the fact that it has been frequently acted upon in practice, and I am not aware that it has ever before been assailed on the ground of its unconstitutionality; and this court, in one case at least, has revised the action of a special judge selected by the parties under the statute, which was equivalent to an assertion of the rightful jurisdiction of such special judge.—Holly v. Carson, 39 Ala. 345; see also, Grinstead v. Buckley, 32 Miss. 148. It results from what has been said, that the motion to dismiss the appeal must be overruled; * * *."

This holding is in direct conflict with the Amos case, supra, and the interpretation of the constitution therein.

Article VI, Section 151 of the constitution provides: "The supreme court shall consist of one chief justice and such number of associate justices as may be prescribed by law." If any authority other than the plenary power vested in the legislature was needed to authorize it to enact Title 13, Chapter 2, of the Code of 1940, this provision of the constitution would be ample authority to that end. We are, therefore, of opinion that Section 15, Title 13, Code of 1940, is not subject to the challenge that it is unconstitutional.

Proceeding to the consideration of the other questions argued in the application for rehearing, it may be observed that it has long been settled in Alabama, that although the appointment of a judge to an

existing office is void, if he has been duly commissioned, as was Special Justice Carnley in the instant case, and acted at a time and place provided by law for holding the court over which he presides or in proceedings in which he participated, he is a de facto *Judge or Justice*, as the case may be, and his acts are valid and unimpeachable.—Ex parte State ex rel. Attorney General et al., 142 Ala. 87, 38 So. 835, 110 Am. St.Rep. 20; Walker v. State, 142 Ala. 7, 39 So. 242; Masterson v. Matthews, 60 Ala. 260; Norwood v. Louisville & N. R. Co., 149 Ala. 151, 42 So. 683.

The motion to expunge and the application for rehearing are without merit and are, therefore, overruled.

All the Justices concur except GARDNER, C. J., not sitting.