18 So.2d 383

## CAPLES et al. v. NAZARETH CHURCH OF HOPEWELL ASS'N.

### 6 Div. 178.

Supreme Court of Alabama.

May 18, 1944.

Rehearing Denied June 22, 1944.

Gordon Davis and J. Monroe Ward, both of Tuscaloosa, and L. P. Harriss, of Duquoin, Ill., for appellants.

Foster, Rice, Madison & Rosenfield, of Tuscaloosa, for appellee.

STAKELY, Justice.

Nazareth Church is a Primitive Baptist Church located in the northern part of Tuscaloosa County. It is an unincorporated association and was organized in 1849. In 1937 a dispute arose among the members, with the result that a number of members were excluded from the church, including J. A. Caples, W. B. Norris and W. J. Hocutt. The exclusion is admitted by the excluded members. It is claimed, however, that the exclusion was wrongful because the church at the time was in disorder.

Some time after the exclusion in 1937, the excluded members had a meeting and organized a church, which became known as the "Log Cabin Church." This church met sometimes in the home of one of its members and sometimes in a log cabin. The members excluded from Nazareth Church never interfered with it in any way and the Nazareth Church continued in possession of and still has possession of the church property where services have been conducted since the church was founded in 1849.

At the time the members were excluded from Nazareth Church, it was a member of an association of churches known as the Hopewell Association. Each October the Association met in conference at some one of its churches. In October, 1940, the Nazareth Church, which up to that time had been a member of the Association, withdrew from the Association on its own request. It was dropped from the Association by unanimous vote on its own request.

Thereafter the "Log Cabin Church" for the first time asserted its right to the church property of Nazareth Church and petitioned the Hopewell Association for admission to it as a member, claiming that its membership constituted the true Nazareth Church. The Association investigated the matter and thereafter at its meeting in October, 1941, decided that the Log Cabin Church was the Nazareth Church and took the Nazareth Church, as so constituted, into its membership.

The group, who constituted what for convenience might be termed the new Nazareth Church, thereupon employed attorneys who filed the bill in equity in this case to enjoin the members of the original Nazareth Church from the use of the church property and the conduct of services therein, praying also for the right to take possession of the church property and conduct its services and meetings therein, without molestation from the respondents.

The respondents thereupon filed a plea in abatement denying the right to institute the suit in the name of Nazareth Church of Hopewell Association. Without waiving the plea in abatement, the respondents then demurred to the bill and without waiving either the plea in abatement or the demurrer, they then filed an answer, in substance denying the allegations of the bill and alleging that they constituted the true Nazareth Church.

After hearing the evidence, the court rendered a decree for the complainant on the plea in abatement and further granted complainant the relief prayed for in the bill. This appeal is from that decree.

The bill of complaint in this suit is brought in the name of Nazareth Church of the Hopewell Association, an unincorporated association. The proof shows that

the attorneys who filed the suit were authorized so to proceed by J. A. Caples and W. B. Norris, who claimed to be deacons of the church, and W. J. Hocutt, who claimed to be clerk of the church. It is further claimed that authority so to act had first been duly conferred on these alleged officers by action of the Nazareth Church.

■ Were the attorneys authorized to bring this suit in the name of Nazareth Church of the Hopewell Association? Answer to this question will determine the litigation. The right to bring the suit in this manner was challenged by plea in abatement. This method of attack has been approved by this court. Mitchell et al. v. Church of Christ at Mt. Olive, 219 Ala. 322, 122 So. 341; Id., 221 Ala. 315, 128 So. 781, 70 A.L.R. 71; Blount v. Sixteenth St. Baptist Church, 206 Ala. 423, 90 So. 602.

■ As stated, the suit was authorized by the Log Cabin group, whose leaders were J. A. Caples, W. B. Norris, W. J. Hocutt and T. T. McQueen. Those who remained in the church and who constitute what we term for convenience the original group, took no part in granting the authority and had no due notice of such proposal, although they largely outnumbered the Log Cabin group. It therefore cannot be said that Nazareth Church authorized the suit in the sense that the entire original membership, comprised of both groups, had given the necessary authority. Blount v. Sixteenth St. Baptist Church, supra; Skyline Missionary Baptist Church v. Davis et al., ante, p. ——, 17 So.2d 533. See also, Barton et al. v. Fitzpatrick et al., 187 Ala. 273, 65 So. 390.

■ But it is insisted by the Log Cabin group that they constitute the true Nazareth Church because the original group had departed from the ecclesiastical usages and principles which were accepted before the dispute arose. If such is the true situation, then the ordinary principles of majority rule will not apply. Manning v. Yeager, 203 Ala. 185, 82 So. 435. And so with some degree of reluctance we proceed to a consideration of this insistence. While we concede "that the courts have no power to revise ordinary acts of church discipline or pass upon controverted rights of membership" (Gewin et al. v. Mt. Pilgrim Baptist Church, 166 Ala. 345, 349, 51 So. 947, 139 Am.St.Rep. 41; Hundley v. Collins, 131 Ala. 234, 32 So. 575, 90

Am.St.Rep. 33), still where property rights are involved, the courts will intervene to determine "whether the use of the property is being devoted to doctrines radically opposed to the distinctive doctrines and practices of the society." Mitchell v. Church of Christ, 221 Ala. 315, 318, 128 So. 781, 70 A.L.R. 71. The heart of this case is the right to control of the church building and the ground on which it stands.

"It is familiar law that where factional differences occur in an ecclesiastical body, the rule of the civil courts in dealing with the property rights disputed between the factions is to give effect to the will of that part of the organization acting in harmony with the ecclesiastical laws, usages, customs, and principles which were accepted among them before the dispute arose. Gewin v. Mt. Pilgrim Church, 166 Ala. [345] 349, 51 So. 947, 139 Am.St.Rep. 41, and cases there cited." Barton et al. v. Fitzpatrick et al., 187 Ala. 273, 277, 65 So. 390.

■ We have combed the record to determine this question. The evidence fails to show that either group, old or new, has departed from the tenets and principles for which the church was dedicated and which obtained before the dispute arose. Vague and indefinite generalities and accusations will not suffice. We will deal only with the specific charges, the sufficiency thereof and the proof brought to substantiate such charges. It is charged that with reference to belief in the resurrection, two members of the original group said "they believed it, but didn't believe it was this body." While there is evidence tending to refute this charge, whatever view may be taken of this belief, it cannot be said that the belief of two members is proof of the beliefs of the group as a whole. According to the testimony, this group ranged in number from about twenty to thirty-two.

"To justify interference it must be shown that the purpose of the majority or governing body is to make a gratuitous transfer of the property of the society to another denomination, or to disavow and depart from the characteristic, distinctive doctrines and practices, and devote the use of the property to doctrines radically opposed to the distinctive doctrines and practices of the society. Such purpose must appear either from an open avowal on the part of the majority, or from its acts and conduct manifesting such

purpose beyond all reasonable doubt." Mitchell et al. v. Church of Christ at Mt. Olive, 221 Ala. 315, 318, 128 So. 781, 70 A.L.R. 71.

It is charged that the original group failed to follow the order and discipline of the church when J. A. Caples, W. B. Norris and W. J. Hocutt were excluded.

We quote now from the testimony of J. A. Caples:

"Q. Well, nobody has ever excluded them, have they? A. They (appellants) excluded themselves.

"Q. How you mean by saying that,—do you have any record where they have excluded themselves? A. By withdrawing from a true church; from a church holding the doctrine of discipline.

"Q. Well, they have held their church as they have always? A. But it has been in disorder.

"Q. What you mean by that,—by disorder? A. By not following the old order and discipline of the church.

"Q. What have they ·failed to follow? A. They failed to comply with the law and rule of the church in supposedly excluding Brother Norris, Brother Hocutt and myself.

"Q. Don't the church have a right to exclude any member in which the majority of the Baptist Church rules to exclude? A. They have a rule to do that.

"Q. Didn't they do that by rules? A. No, sir."

We quote now from the testimony of W. J. Hocutt:

"Q. What did you consider that stopped them from being the Nazareth Church? A. Departing from the practice that that church was established on.

"Q. And what departure was that? A. In carrying out discipline.

"Q. What was that? A. They excluded me and didn't carry out one word of the practice and discipline that is laid down in the Bible.

"Q. You considered that when they excluded you and excluded Mr. Caples and Mr. Norris that that was what put them out of order? A. They were already in disorder. They had already left the discipline before that.

"Q. Tell us about that? A. That conference was called on Friday and you can't call a conference,—a special confer-

ence, without you got some special reason for it and you have got to notify every member of that fact before it is legal.

"Q. And when they called the conference to exclude you and Mr. Caples and Mr. Norris, you say that is where they began to be out of order, that is the first disorder you ever noticed, wasn't it? A. Well, there was already no real disorder until they brought that in the church; they brought it in illegal.

"Q. That was when they became disorderly, was it? A. Yes, sir."

The Constitution of Nazareth Church contains the following provision:

"5. In all ordinary Church business a majority shall rule except in receiving and excluding members, then there must be unanimity."

The proof shows that a majority of the members of the church were present at the meeting of the church when J. A. Caples, W. B. Norris and W. J. Hocutt were excluded. All those present voted unanimously for the exclusion. The proof further shows that those excluded were notified of the meeting, actually came to the meeting and then left.

■ It will be observed that this case does not present a situation where a church membership due to a schism breaks apart into two factions. Here J. A. Caples, W. B. Norris and W. J. Hocutt were excluded by church action, after which they proceeded to organize the Log Cabin Church. While from our examination of the record, we consider the exclusion in regular order, we make it clear that we do not consider it necessary for us so to find by passing on procedural questions. These are church matters, which it is not our function to supervise.

"It may be conceded that we have no power to revise or question ordinary acts of church membership, or of excision from membership. We have only to do with rights of property. * * * We cannot decide who ought to be members of the church or whether the excommunicated have been regularly or irregularly cut off. We must take the fact of excommunication as conclusive proof that the persons exscinded are not members * * *. In a congregational church, the majority, if they adhere to the organization and to the doctrines, represent the church." Bouldin v. Alexander, 15 Wall. 131, 82 U.S. 131, 21 L.Ed. 69.

See also Blount v. Sixteenth St. Baptist Church, supra; Tucker et al. v. Denson et al., 202 Ala. 308, 80 So. 373. In citing with approval the forgoing decision of Bouldin v. Alexander, supra, this court in Gewin v. Mt. Pilgrim Baptist Church, supra, said:

"While the courts cannot decide who ought to be members, they may inquire whether any disputed act of the church affecting property rights was the act of the church or of persons having no authority."

■ It must be remembered that we are here dealing with the right to employ attorneys and institute this suit. Can it be said that the act of J. A. Caples, W. B. Norris and W. J. Hocutt, and the others who joined them, in authorizing this action, was the act of the Nazareth Church, because by defects in procedure in excluding J. A. Caples, W. B. Norris and W. J. Hocutt, the original group was thereby excluded? We think not? No departure has been shown by the original group who comprised the Nazareth Church from the faiths and principles of the Primitive Baptist Church. Authorities, supra.

■ But it is claimed that the Hopewell Association found the Log Cabin group to be the true Nazareth Church. And so it did in its conference of October, 1941.

But the proof, including the minutes of the Association, shows that in its conference of October, 1940, the Nazareth Church had been dropped from membership in the Association on the request of the Nazareth Church. How then could the Association retain any jurisdiction in the matter? We do not think it could.

"The proof is that Concord Church has withdrawn from the Association with Cullman Baptist Association and the Alabama Convention. That was its right according to Baptist law and practice." Manning v. Yeager, 203 Ala. 185, 82 So. 435.

See also Guin v. Johnson, 230 Ala. 427, 161 So. 810.

■ But beyond all this is the principle that in a congregationally governed church such as the Baptist Church, the action of the church controls and not the action of the Association.

"The Baptist church is congregational in its policy. It is democratic in its organization. It is the right of each congregation to rule itself in accordance with the law of the church. The will of the majority having been expressed, it becomes the minority to submit. There are no appellate judicatories." Gewin et al. v. Mt. Pilgrim Baptist Church, 166 Ala. 345, 349, 51 So. 947, 139 Am.St.Rep. 41.

See also Pallilla v. Galilee Baptist Church, 215 Ala. 667, 112 So. 134; Blount v. Sixteenth St. Baptist Church, supra; Mitchell v. Church of Christ, supra.

The Constitution of the Hopewell Association bears out the foregoing:

"3. The members thus chosen and convened shall be known as the Hopewell Old School Association, which shall have no power to lord it over God's heritage, or infringe on any of the internal rights of any of the churches in our union, but shall merely be considered as an advisory council in matters respecting their internal concerns, for the common benefits of all such churches. Yet the Association shall have the power to exclude any church from the union who shall violate or deviate from the orthodox principles of the gospel."

■ In its relation to its member churches, the Hopewell Association is only an advisory council. It has the power to exclude any church from its own membership for the reasons stated. But the Constitution does not even attempt to say that its action has any effect on the local church beyond exclusion from the Association.

We do not think that the action of the Association is conclusive in this case.

And so we conclude that the plea alleging lack of authority for bringing this suit was sustained by the proof, although we wish to make it clear that this finding is not in any sense a criticism of the attorneys who brought the action.

Accordingly, the decree of the lower court is reversed and a decree will be here rendered dismissing the bill.

Reversed and rendered.

GARDNER, C. J., and THOMAS, BROWN, FOSTER, and LIVINGSTON, JJ., concur.