23 So.2d 592

### Ex parte RILEY.

**RILEY v. McELROY et al., Circuit Judges.**

6 Div. 356.

Supreme Court of Alabama.

June 30, 1945.

Rehearing Denied Nov. 1, 1945.

Horace C. Wilkinson, of Birmingham, for petitioner.

Bradley, Baldwin, All & White, of Birmingham, for intervener.

Other branches of the litigation are Riley v. Wilkinson et al., Ala.Sup., 23 So.2d 582;[1] Wilkinson v. Wilkinson, Ala. Sup., 23 So.2d 601;[2] and Wilkinson v. McCall, Ala.Sup., 23 So.2d 577.[3] For a complete understanding of this case, reference is made to these other cases. While we shall attempt not to repeat in too great detail the facts set forth in the other cases, it is necessary for an understanding of this case that enough of the facts be stated as will give an adequate background of this branch of the litigation.

Edward Wilkinson, Sr., died on November 6, 1941, leaving surviving him his widow, Grace Wilkinson, and four children, Mrs. Marguerite Mudd, wife of J. P. Mudd; Mrs. Elizabeth Lanier, wife of Sterling Lanier; Mrs. Dimmis Riley, wife of E. W. Riley; and Edward Wilkinson, Jr. The estate of the decedent consisted principally of 151 shares of common stock of the Western Grain Company. Under the will of the decedent, which was probated in the Probate Court of Jefferson County, Edward Wilkinson, Jr., and Mrs. Lanier were appointed coexecutors. During the life of Edward Wilkinson he created five separate trusts for the benefit of his wife and four children. He named himself trustee in each of the trusts and named Edward Wilkinson, Jr., and Mrs. Lanier as successor trustees. The property in each of the trusts consisted solely of shares of common stock of Western Grain Company. At the time of decedent's death there were outstanding 500 shares of common stock and 150 shares of preferred stock in the Western Grain Company. On December 17, 1941, a meeting of the stockholders was called, at which it was proposed to elect Edward Wilkinson, Jr., as president of the company. Mr. and Mrs. Mudd objected on the grounds that he was neither capable nor fit for the office. The voting resulted in election of Edward Wilkinson, Jr.

On December 22, 1941, Mr. and Mrs. J. P. Mudd and Mrs. Grace Wilkinson, by Mr. Mudd as next friend, filed a bill in equity praying for the removal of Edward Wilkinson, Jr., as president of Western Grain Company and the removal of Edward Wilkinson, Jr., and Elizabeth Lanier as executors and trustees. On May 25, 1942, the suit was settled by agreement. Among other things, the decree settling the litiga-

STAKELY, Justice.

This proceeding is another phase of the litigation growing out of the estate of Edward Wilkinson, deceased. Two questions are here presented for review: (1) The right vel non of certain parties interested in the estate to have an administrator ad litem appointed by the court pursuant to section 165, Title 61, Code of 1940, to represent the estate on the hearing of a petition known as the petition of February 5, 1944; (2) the right vel non of certain attorneys to file the petition of February 5, 1944.

[1] Ante, p. 231.
[2] Post, p. 702.
[3] Ante, p. 225.

tion enjoined Edward Wilkinson, Jr., and Mrs. Lanier from voting any stock standing in their names in a representative capacity for the benefit of any executors in the estate of Edward Wilkinson or trustees in the trusts created by him, as a salaried officer of Western Grain. The decree also provided for the resignation of Edward Wilkinson, Jr., as president of Western Grain and for the resignation of Mrs. Elizabeth Lanier as coexecutor and cotrustee and provided that the appointment of a successor coexecutor and cotrustee would be made by the court. At the conclusion of the litigation, Bethea McCall was made president and general manager of Western Grain.

The company prospered under the new management, but this resulted in problems relating to income taxes, and the feeling between the two factions in the family, Mr. and Mrs. Mudd and Mrs. Dimmis Riley on the one hand and Edward Wilkinson, Jr., and Mrs. Elizabeth Lanier on the other hand, grew more and more bitter, and there were threats of receivership and litigation to set aside the settlement under the decree of May 25, 1942. In the meantime the court induced Bethea McCall to accept the appointment as coexecutor and cotrustee under the will of the deceased.

On December 15, 1942, an action was instituted to set aside the settlement under the decree of May 25, 1942. In the meantime the matter of the estate tax was becoming a matter of growing importance. In the early part of 1943 the estate tax return was filed and the government entered a deficiency estate tax assessment which called for the additional payment by the estate of $52,000. The estate had only $6,000 in cash.

A petition was filed on October 16, 1943, by the coexecutors asking the court for instructions as to how to meet the payment of the tax. While evidence was being taken on that petition, a deputy collector seized certificate No. 38 for 150 shares and certificate No. 41 for one share of stock of Western Grain. These certificates were issued to the decedent during his lifetime and were in the custody of Western Grain or Bethea McCall, as coexecutor, at the time they were seized. These certificates had been previously surrendered to the Western Grain Company after the death of decedent, before they were seized, in exchange for a new certificate, No. 71, for 151 shares issued to the coexecutors and cotrustees at

that time. Certificate No. 71 was never seized by the collector. The collector was threatening to sell at least 150 shares of stock on January 24, 1944.

On January 20, 1944, the court entered a final decree which provided a plan for raising the money to meet the assessment through a sale of stock under certain conditions. The decree enjoined disposition of the stock on a basis at variance with the decree. The same day the decree was superseded by supersedeas bond and the next day Bethea McCall, as coexecutor, and Mrs. Marguerite Mudd made a contract under which, among other things, Mrs. Mudd agreed to purchase 151 shares of common stock of Western Grain on a certain basis. It is claimed that this contract violated the decree of January 20, 1944, and the petition, hereinabove referred to as the petition of February 5, 1944, was filed by Mrs. Elizabeth Lanier and Edward Wilkinson, Jr., individually and as coexecutor, to set aside the contract of sale made between Mrs. Mudd and Bethea McCall, as coexecutor.

On February 3, 1944, the collector held his sale, selling thirty-four shares of the stock on a basis of $1,480 per share to Mrs. Lanier and the tax was paid.

Mrs. Dimmis Riley and Mrs. Marguerite Mudd separately and severally made a motion, based on the alleged adversary pecuniary interest of Edward Wilkinson, Jr., for the appointment of an administrator ad litem to represent the estate of the decedent on the hearing of the petition of February 5, 1944, and to give such administrator ad litem authority to employ counsel not otherwise interested in the cause. (The motion will appear in the report of the case.) Mrs. Elizabeth Lanier and Edward Wilkinson, Jr., made a motion to strike the motion for the appointment of an administrator ad litem. The court, consisting of three judges, McElroy, Windham and Morrow, granted the motion to strike the motion for the appointment of an administrator ad litem.

Subsequently Mrs. Marguerite Mudd filed a plea in abatement No. 5 to the petition of February 5, 1944. (Plea in abatement No. 5 will be set out in the report of the case.) On the same day Mrs. Dimmis Riley filed her plea in abatement, which was an adoption of the plea in abatement of Mrs. Marguerite Mudd. The plea in abatement alleged in effect that counsel were not au-

.thorized to file and were disqualified from filing the petition of February 5, 1944. Judge Julian Harris rendered decrees striking the plea in abatement on the motion of Mrs. Lanier and Edward Wilkinson, Jr., individually and in his capacity as executor of the will and trustee thereunder.

This court is asked to review each of the aforesaid rulings by mandamus and four causes are submitted, each on petition for mandamus, motion to strike, and respective answer thereto of the judges. No objection is made to review by mandamus. The salient features of the answer of the judges will appear in the report of the case. We have here a motion of Mrs. Dimmis Riley for a writ of mandamus to Judges McElroy, Windham and Morrow, 6 Div. 356; a motion of Mrs. Marguerite W. Mudd for a writ of mandamus to Judges McElroy, Windham and Morrow, 6 Div. 357, 23 So.2d 601;[1] a motion of Mrs. Dimmis Riley for a writ of mandamus to Judge Julian Harris, 6 Div. 354, 23 So.2d 601;[2] and a motion of Mrs. Marguerite W. Mudd for a writ of mandamus to Judge Julian Harris, 6 Div. 355, 23 So.2d 601.[1] These cases have been consolidated and will be here considered together. Edward Wilkinson, Jr., as executor of the will of Edward Wilkinson, deceased, and trustee thereunder, has asked to be allowed to intervene. He will be considered as a party to these mandamus proceedings.

It should be clearly understood that the merits of the petition of February 5, 1944, to cancel the Mudd-McCall contract for the sale of 151 shares of stock in Western Grain Company, are not involved in the matter now before us. While the present motion of Mrs. Riley and Mrs. Mudd and their plea in abatement do not attack the petition of February 5, 1944, on its merits, they do question the right or propriety of Edward Wilkinson, as coexecutor, and his attorneys to institute the petition. The plea in abatement directly questions the right to employ the attorneys. The motion by seeking an administrator, who will supersede Edward Wilkinson, Jr., with respect to the petition of February 5, 1944, has the same object.

Section 165, Title 61, Code of 1940, provides as follows: "§ 165. When administrator ad litem appointed.—When, in any proceeding in the probate or circuit court, or other court having equity jurisdiction, the estate of a deceased person must be represented, and there is no executor or administrator of such estate, or he is interested adversely thereto, it shall be the duty of the court to appoint an administrator ad litem of such estate for the particular proceeding, without bond, whenever the facts rendering such appointment necessary shall appear in the record of such case, or shall be made known to the court by the affidavit of any person interested therein."

■ Prior to the enactment of the statute an administrator ad litem was unknown to our law and the appointment of such an administrator was void. McCall v. McCurdy, 69 Ala. 65, 72. Under the statute three things must concur to justify the appointment: (1) The estate of the deceased person "must be represented," which means that the interests of the estate require representation. (2) "There is no executor or administrator of such estate, or he is interested adversely thereto." (3) "The facts rendering such appointment necessary shall appear in the record of such case, or shall be made known to the court by the affidavit of any person interested therein." See Gayle's Adm'r v. Johnston, 72 Ala. 254, 47 Am. Rep. 405; Ex parte Lyon, 60 Ala. 650; Clark v. Knox, 70 Ala. 607, 45 Am.Rep. 93.

■ In the case at bar all of the persons interested in the estate, which includes all beneficiaries and both coexecutors, are before the court, with full opportunity to protect their respective rights. Where this is the situation, no representation of the estate by an administrator ad litem is required. Taylor v. Fulghum, 206 Ala. 219, 89 So. 702; Ex parte Baker, 118 Ala. 185, 23 So. 996; Faulk v. Money, 236 Ala. 69, 181 So. 256. And in such situation the expense occasioned by such appointment should not be incurred. Ex parte Baker, supra.

■ But it is earnestly insisted that Mrs. Riley and Mrs. Mudd should not be required to defend against an effort on the part of the coexecutor, Edward Wilkinson, Jr., to cancel the McCall-Mudd contract, when such coexecutor is not disinterested, but is motivated by a desire to

[1] Post, p. 699.  [2] Post, p. 700.

save the securities he loaned his sister, as alleged in their motion. We do not take this view of the matter. The purpose of the petition to cancel the Mudd-McCall contract must necessarily first be to recapture the stock for the estate. We do not think that the effort so to recapture the stock for the estate should be clouded by what may be attempted in the event the stock is recaptured. That can be considered and passed upon if and when the attempt is made to secure the stock from the estate.

■ Besides, at this stage of the case, we are not sure that the interest of Edward Wilkinson, Jr., is adverse to the estate. If it is, it is so remote and contingent upon unsettled conditions as not to be significant at this time. There is no allegation in the motion that the Collector's sale was fraudulent. It is averred to be void. It may be that even though Mrs. Lanier would not be entitled to thirty-four shares of stock, she would be entitled to reimbursement for the amount paid by her to the Collector under principles expressed in Anniston Pipe Works v. Williams, 106 Ala. 324, 18 So. 111, or to subrogation under principles expressed in Schuessler v. Shelnutt, 233 Ala. 188, 171 So. 259. See also Taylor v. Fulghum, supra. If any one of Mrs. Lanier's claims, viz., either the claim to thirty-four shares of stock, the claim to reimbursement or the claim to subrogation, is valid, then Edward Wilkinson, Jr., as coexecutor, should acknowledge the claim, not dispute it, for an executor should not dispute a meritorious claim. 34 C.J.S., Executors and Administrators, § 439, p. 259. We do not mean to intimate in any way that we think that Mrs. Lanier has any valid claim against the estate. Any such question will be passed on if and when such question is presented. What we do mean to say is that we are not so satisfied at this time that the interests of Edward Wilkinson, Jr., are adverse to the estate as to require the appointment of an administrator ad litem.

Then, too, at this stage of the case we are uncertain as to whether or not Mrs. Lanier is unable to pay the amount borrowed by her, as alleged in the motion. There is not a sufficient showing of the liabilities and assets of Mrs. Lanier for the court to form a belief as to the value of her estate. If Mrs. Lanier is able to pay her debt, then the danger to the securities which Edward Wilkinson, Jr., loaned her, is not apparent.

■ Nor do we mean to intimate that we have any opinion as to whether or not the Mudd-McCall contract is subject to cancellation or should be cancelled. We will pass on any such questions if and when the questions are presented. What we do mean to say is that on such a hearing an administrator ad litem need not be appointed. This is peculiarly true in the present instance. One executor, Bethea McCall, obviously supports the execution of the contract for the sale of 151 shares of stock in Western Grain Company to Mrs. Marguerite Mudd, while the other executor, Edward Wilkinson, Jr., opposes such contract. With one executor on one side of the question and one on the other, the court should certainly receive full information as to whether or not the contract can or should be given force and effect.

The court was not in error in granting the motion to strike the motion for the appointment of an administrator ad litem.

■ This brings us to a consideration of plea in abatement No. 5, filed by Mrs. Mudd and adopted by Mrs. Riley. Where the authority of the attorney to appear for a party to the cause is questioned, we have held that the authority can be challenged by plea in abatement. Caples v. Nazareth Church of Hopewell Ass'n, 245 Ala. 656, 18 So.2d 383; Blount v. Sixteenth St. Baptist Church, 206 Ala. 423, 90 So. 602; Mitchell v. Church of Christ at Mt. Olive, 219 Ala. 322, 122 So. 341. And we have said in effect that such authority must be challenged at the earliest opportunity. Mitchell v. Church of Christ at Mt. Olive, supra. While Mrs. Mudd filed a demurrer to the petition of February 5, 1944, before filing her plea in abatement, Mrs. Riley did not and so we proceed with the discussion.

■ Analysis of the plea in abatement shows that it is based on two sets of allegations: (1) Allegations seeking to show the pecuniary adverse interest of Edward Wilkinson, Jr., growing out of the loan of his securities to Mrs. Lanier to enable her to make good her bid at the collector's sale and the resulting interest of Edward Wilkinson, Jr., in her claim against the estate; and (2) allegations seeking to show that Messrs. Bradley,

Baldwin, All & White are not competent as attorneys to file the petition of February 5, 1944, because of alleged conflicting interest growing out of their alleged interest in establishing the claim of Mrs. Lanier against the estate. Of the requirements of a plea this court has said:

"The essential nature and requirement of a plea at law or in equity is that it shall completely answer the bill, at least to the extent that it purports to be a defense; and therefore, if any material allegation is not negatived by a traverse or confession and avoidance, it is necessarily taken as true in considering the plea, and will render it bad. 16 Cyc. 288; McKay, etc., v. Southern Bell Tel. Co., 111 Ala. [337], 351, 19 So. 695, 31 L.R.A. 589, 56 Am.St. Rep. 59. 'The averments of a plea must be certain, precise, and such as are necessary to avoid all ambiguity of meaning and exclude all intendments. * * * If we allow the averment to be true, but at the same time a case may be supposed consistent with it which would render the averment inoperative as a full defense, such a case will be presumed or intended, unless excluded by particular averments.' Whitlock v. Fiske, 3 Edw. Ch., N.Y., 131. The matter in the plea must be a complete bar to the equity in the bill." Scharfenburg v. Town of New Decatur, 155 Ala. 651, 654, 655, 47 So. 95, 96.

It is obvious that what we have said with reference to the adverse interest of Edward Wilkinson, Jr., in connection with the motion for an administrator ad litem, is equally applicable here. If it is not plain that the interest of Edward Wilkinson, Jr., is adverse to the estate, then we do not see how his authority to employ attorneys of his own choice can be assailed. Strumpf v. Wiles, 235 Ala. 317, 179 So. 201. According to the plea, the attorneys occupy the same relation to the estate and to the heirs of the decedent as does Edward Wilkinson, Jr. It is not clear to us that we should put Judge Harris in error for striking the plea in abatement of Mrs. Mudd and Mrs. Riley, and we agree with him that the cause should proceed to direct hearing of the petition of February 5, 1944.

The writ is denied in each of the causes here consolidated.

Writ denied.

All the Justices concur.