PARKER, Justice
(concurring specially).
I agree with this Court’s decision to deny the petition for a writ of mandamus filed by Cornell L. Tatum, Sr., Charlie Hardy, and Charles Lancaster (“the petitioners”). I write specially to emphasize that a circuit court lacks subject-matter jurisdiction to apply judicial notions of due process to church proceedings when the highest adjudicatory body of a church decides a purely ecclesiastical matter. Additionally, I write to note that, a circuit court may recognize a decision by the highest adjudicatory body of a church concerning a purely ecclesiastical matter and, based on that decision, enjoin persons from taking unauthorized actions on behalf of the church.
To understand the limited scope of the ecclesiastical matter in the present case, a recitation of the facts before this Court is necessary. On December 14, 2008, the Greenwood Missionary Baptist Church (“the church”) adopted a set of bylaws entitled “Bylaws for the Governance of Greenwood Missionary Baptist Church” (“the bylaws”). The bylaws, which vest the governance of the church in its members, state:
“The governance of [the church] shall be vested in the members who compose it, and, as such, it is subject to the control of no other ecclesiastical organization. Also, none of its boards, committees or officers can usurp its executive, governmental or policy-making powers except as provided for in these bylaws.”
The bylaws mandate that a board of deacons (“the board”) be established for the church. The board is responsible for holding in trust all property belonging to the church, determining the use of the church building for all non-religious purposes, designating the financial institution at which church funds are deposited, and securing the services of all staff at a salary authorized by the church. The board is “ordained to their work according to Acts 6:1-8 and 1 Timothy 3:8-13.”[2]
*435 The bylaws set forth the following procedure by which deacons are selected:
“Church members shall first nominate candidates to the Pastor and Chair of [the board]. On recommendation of the board the candidates are presented to the congregation. At a church meeting, [the board] shall make its recommendation to the [c]hurch. Those persons to be accepted by the [c]hurch to fill the office of Deacon must meet the standards..as listed in; [Acts 6:1-8 .and 1 Timothy 3:8-13]. Candidates for Dea-conship will then receive training and preparation for their tasks. At the end of this period and upon recommendation to the [c]hurch by the Pastor, the candidate(s) shall be ordained.”
The bylaws also require that individual deacons “shall actively hold office provided they faithfully discharge their duties.” Furthermore, the bylaws state that “[t]he [c]hurch may, for good and sufficient cause, remove any Deacon from office at any appropriate time it deems necessary.”
Prior to April 20, 2014, the petitioners were deacons of the church! On April 20, 2014, the congregation of the church called á meeting at which the members of The church who attended unanimously passed a motion to remove the petitioners from their positions as deacons.
Following the April 20, 2014, meeting, a letter was sent to the board, purportedly on behalf of the church. The letter advised the board, in pertinent part:
“The congregation of [the church] called a church meeting on Sunday, April 20, 2014. Attending members discussed, moved, and voted to remove [the petitioners] as Deacons effective immediately. Their authoritative' and repeated Pastor-removal communications/activities with complete disregard for the church governance by the church body were included in the expressions of the body. Also expressed was that the spirt of their communications and actions was not perceived as coming from God’s Spirit.”
The letter is signed “The Greenwood Missionary Baptist Church” and states “see attached.for signatures.” Included! with the. letter is an attachment entitled “Greenwood Missionary Baptist Church Church Meeting.” The attachment is dated April 20, 2014, and contains 95 signatures; nothing before this Court indicates how many members, are in the church.
On April 21, 2014, a letter was sent to each of the petitioners, purportedly on be *436 half of the church. Each letter stated, in pertinent part:
“By executing Article VIII, Section 1 (Church Boards and Ministries) [of the bylaws] which reads, ‘The [c]hurch may, for good and sufficient cause, remove any Deacon from office at any appropriate time it deems necessary,’ the membership of [the church] have voted on a motion to-remove you as a Deacon on [the board] of [the church]. Thus, effective April 20, 2014, you are no longer a Deacon at the [c]hurch. All activities associated with your previous office as Deacon should cease effective April 20, 2014, as you have already been notified by letter of the church’s decision on that date."
On April 24, 2014, Tatum sent a letter addressed to “Members of Greenwood Missionary Baptist Church,” which stated, in pertinent part:
“This is an official, notice from [the board] regarding the unofficial meeting held in the Kelly Smith House on Sunday April 20, 2014. [The church] has established Policies and Bylaws' that were' not followed. Therefore, [the board] in a called meeting on April 22, 2014, rendered all actions taken in this meeting and communications - sent to [the petitioners], are null and void without standing and fail to abide by the [b]ylaws of the [c]hurch.”
It is undisputed that Marlin King, Deborah Banks, and Helen King (“the plaintiffs”) are members in good standing of the church. On June 5, 2014, the plaintiffs filed a complaint against the petitioners before Judge Thomas Young in the Macon Circuit Court (“the circuit court”) requesting: 1) “an order enjoining [the petitioners] from taking any act as .a member of [the board] of [the church],” and 2) “an [o]rder declaring that the recent votes of the congregation are valid arid that [the petitioners] have been removed as members of [the board].” The plaintiffs filed their complaint “on behalf of themselves and. the concerned members of [the church].” .
On July 18, 2014, the- petitioners filed a motion to dismiss the plaintiffs’ complaint, alleging that the circuit court lacked subject-matter jurisdiction. The petitioners alleged, -in part, that “[t]his case involves religious and ecclesiastical matters concerning who and who is not a member of [the board] -and Board of Trustees of [the church], which is a religious matter that should be decided by [the board] and Board of Trustees of [the church].”
On July 21, 2014, the circuit court held a hearing at which the petitioners’ motion to dismiss for lack of subject-matter jurisdiction was discussed. On July 25, 2014, the circuit court'issued a preliminary injunction enjoining the petitioners from “undertaking- any act as a member of [the board] of [the church] including any participation in -Deacon meetings or performing any duties or responsibilities of a deacon while this order is in effect.” On July 29, 2014, the circuit court denied the petitioners’ motion to, dismiss for lack of subject-matter jurisdiction.
On August 27, 2014, the petitioners petitioned this 'Court for a writ of mandamus directing, the .circuit court to vacate its order denying their motion to dismiss for lack of subject-matter jurisdiction; the petitioners did not ask this Court to direct .the circuit court to vacate the preliminary injunction.
Before this Court the petitioners allege, in part, that the circuit court exceeded its discretion when it denied the petitioners’ motion to dismiss' for lack of subject-matter jurisdiction. Specifically, the petitioners argue that the circuit court exceeded its discretion because, the petitioners ar *437 gue, the First Amendment to the United States Constitution deprives the circuit court of subject-matter jurisdiction and because, the petitioners argue, the circuit court purportedly violated the Alabama Religious Freedom Amendment (“ARFA”), Ala. Const.1901, Art. I, § 3.01.
The petitioners allege that the First Amendment of the United States Constitution deprives the circuit court of subject-matter jurisdiction, arguing as follows:
‘ “In the present case three members of [the church] ... want the Judiciary Branch of the Government of the State of Alabama 'to interpret ambiguous bylaws of [the church] and to decide internal disputes of [the church], without making [the church] a party to the case and without giving [the church] an opportunity to decide the interpretation of its own bylaws and to decide its own internal disputes. The Judiciary Branch does not have subject matter jurisdiction to decide such a case because the religious freedom provision of the First Amendihent[3] would be violated. Ex parte Bole, [103 So.3d 40, 50 (Ala.2012)].”
In Ex parte Bole, 103 So.3d 40 (Ala.2012), this Court set out the standard for determining whether, under the Free Exercise Clause of the First Amendment, A state court has jurisdiction over a church dispute:
“With regard to a state court’s jurisdiction over a church in the face of a First Amendment challenge, this Court has stated:
‘“As is the casé'with all churches, the courts will hot assume jurisdiction, in fact has none, to resolve disputes regarding their spiritual or ecclesiastical affairs. However, there is jurisdiction to resolve questions of civil or property rights, Williams v. Jones, 258 Ala. 59, 61 So.2d 101 (1952).’”
103 So.3d at 53 (quoting Abyssinia Missionary Baptist Church v. Nixon, 340 So.2d 746, 748 (Ala.1976)). See also Foster v. St. John’s Baptist Church, Inc., 406 So.2d 389, 391 (Ala.1981) (“Alabama follows the general rule expressed in Odoms v. Woodall, 246 Ala. 427, 429, 20 So.2d 849 (1945): ‘The civil courts will not take jurisdiction of a controversy arising out of the removal, ;of a minister if the right to the position is merely spiritual or ecclesiastical....’” (emphasis added)); Putman v. Vath, 340 So.2d 26, 28 (Ala.1976)(citing Odoms, supra). Additionally, Justice Murdock, then a judge on the Court of Civil Appeals, stated in his opinion concurring specially in McGlathery v. Richardson, 944 So.2d 968, 975 (Ala.Civ.App.2006)(Murdock, J., concurring specially):
“[I]t is. the nature - of the underlying dispute that determines whether a court has jurisdiction to consider matters of church procedure. As Hundley [v. Collins, 131 Ala. 234, 32 So. 575 (1902),] clearly, articulates, if the substantive dispute is-spiritual or ecclesiastical-in nature, -it is irrelevant to the civil court whether the church followed its own procedures, per se; the civil court has no jurisdiction to consider the matter. See also, e.g., Caples v. Nazareth Church of Hopewell Ass’n, 245 Ala. 656, 18 So.2d 383 (1944). Accord Sale v. First Regular Baptist Church, 62 Iowa 26, 17 N.W. 143 (1883); and Evans v. Shiloh Baptist *438 Church, 196 Md. 543, 77 A.2d 160 (1950).”
In Hundley v. Collins, 131 Ala. 234, 32 So. 575 (1902), the Christian Church of Huntsville was “ ‘independent, not subject to the control of any higher or other ecclesiastical judicature'.’ ” 131 Ala. at 242, 32 So. at 578. Following a meeting of its congregation in which Orville M. Hundley was charged with “disorderly conduct in a great degree,” Hundley was removed as a member and deacon. Id. Hundley filed a petition for a writ of mandamus in which he alleged that the Christian Church of Huntsville had improperly removed him as a member because, he asserted, among other reasons, he was not given notice of the meeting and the congregation did not vote on the charges of which he was accused. Id. The trial court denied Hund-ley’s petition, and this Court affirmed its denial, stating:
“There were no property interests involved, nothing touching what are termed the temporalities of the church as contradistinguished from its spiritual-ities. The petitioner had no pecuniary interests, in any direction, involved in the proceeding, and it did not touch any of his civil rights at any point. It may be, the church proceeded irregularly according to common usage in such cases; but it is averred, that this church ‘is of the denomination known as “Disciples of Christ,” of which Alexander Campbell was the original preacher, if not the founder,’ and that ‘each church is of itself independent, not subject to the control of any higher or other ecclesiastical judicature.’ As an ecclesiastical body, therefore, it was a law unto itself, self-governing and amenable to no court, ecclesiastical or civil,' in the discharge of its religious functions. It could make and unmake its rules and regulations for the reception and exclusion of members, and in reference to other matters; and what other body religious or civil could question its right to do so? Certainly, if it violated no civil law, the arm of civil authority was short to reach it. Admitting, therefore, as we must on demurrer, that petitioner had no notice of this proceeding, and- that it was irregular according to common usage,. the church being independent, and not subject to higher powers, and being a law unto itself for its own procedure in religious matters, what it did towards the expul-si(?n of petitioner was not unlawful, even if it was not politic and wise. If the civil courts may in this instfmce interfere to question the exclusion of petitioner, they may do so, in any instance where a member of that or any. other church is removed, on the allegation of irregular and unfair proceedings for the purpose. This would open a door to untold evils in the administration .of church affairs, not consistent with .the principles of religious freedom as recognized in this country, where there is no established church or religion, where every man is entitled to hold and express with freedom his own religious views and convictions, and where the separation of state and church is so deeply intrenched in oúr constitutions and laws.”'
Hundley, 131 Ala. at 242-43, 32 So. at 578 (emphasis added).
I recognize that “this Court has reviewed the actions of churches in expelling members or electing officers. See, e.g., Yates v. El Bethel Primitive Baptist Church, 847 So.2d 331 (Ala.2002); Abyssinia Missionary Baptist Church v. Nixon, 340 So.2d 746 (Ala.1976); In re Galilee Baptist Church, 279 Ala. 393, 186 So.2d 102 (1966).” Lott v. Eastern Shore Christian Ctr., 908 So.2d 922, 928 (Ala.2005). However, to the extent that Yates v. El Bethel Primitive, Baptist Church, 847 So.2d 331 (Ala.2002), Abyssinia Mission *439 ary Baptist Church v. Nixon, 340 So.2d 746 (Ala.1976), and In re Galilee Baptist Church, 279 Ala. 393, 186 So.2d 102 (1966), stand for the proposition that a- circuit court may apply judicial notions of due process to church proceedings when a church decides a purely ecclesiastical matter, this Court appears to have modified that proposition by recognizing Serbian Eastern Orthodox Diocese for the United States of America & Canada v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976), in Lott. Lott involved the termination of church membership and the right of an allegedly wrongfully terminated member to examine the church’s financial records. This Court stated:
“The mere threat of expulsion, which is all the TRO [temporary-restraining order] motion in this case involved, obviously did not involve an issue regarding a secular, or neutral, procedural defect. A challenge such as.this one essentially alleges violation of a substantive right, such as a right to be free from the arbitrary action of an.ecclesiastical body. However, the United States Supreme Court has clearly stated that no such right exists. Serbian Eastern Orthodox Diocese for the United States of America & Canada v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976).
“In Milivojevich, the Court considered whether the Illinois Supreme Court had properly invalidated the decision of the Holy Assembly of Bishops and the Holy Synod of the Serbian Orthodox Church (‘the Mother Church’) to ‘defrock’ Bishop Dionisije Milivojevich ‘on the ground that [the decision] was “arbitrary” because a “detailed review of the evidence disclose[d] that the proceedings resulting in Bishop Dionisije’s removal and defrockment were not in accordance with the prescribed procedure of the constitution and the penal code, of the Serbian Orthodox Church.”.’ 426 U.S. at 718, 96 S.Ct. 2372. The Court held‘that the inquiries made by the Illinois Supreme Court into matters of ecclesiastical cognizance and polity and the court’s action pursuant thereto contravened the First and Fourteenth Amendments.’ 426 U.S. at 698, 96 S.Ct. 2372. In doing so, it explained:
“‘The conclusion of the Illinois Supreme Court that the decisions of the Mother Church were “arbitrary” was grounded upon an inquiry that persuaded the Illinois Supreme Court that the Mother Church had not followed its own laws and procedures in arriving at those decisions. We have concluded that whether or not there is room for “marginal civil court review” under the narrow rubrics of “fraud” or “collusion” when church tribunals act in bad faith for secular purposes, no “arbitrariness” exception in the sense of an inquiry whether the decisions of the highest ecclesiastical tribunal of a hierarchical church complied with church laivs- and regulations is consistent with the. constitutional mandate that civil courts are bound to- accept the decisions of the highest judicatories of a religious organization of hierarchical polity on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law. For civil courts to analyze whether the ecclesiastical actions of a church judicatory are in that sense ‘arbitrar/ must inherently entail inquiry into the procedures that canon or ecclesiastical law supposedly requires the church judicatory to follow, or' else into the substantive criteria by which they are supposedly to decide the ecclesiastical question., But this is exactly the. inquiry that the First Amend *440 ment prohibits; recognition of such an exception would undermine the general rule that' religious controversies are not the proper subject of-civil court -inquiry, and that a civil court must. accept the' ecclesiastical-, decisions of church tribunals as it finds them.....
[[Image here]]
“ ‘Indeed, it is the essence of religious faith -that ecclesiastical decisions are reached and are to be accepted as matters of faith whether or not rational or measurable by objective criteria. Constitutional concepts of due process, involving secular notions of “fundamental fairness” or impermissible objectives, are therefore hardly relevant to such matters of ecclesiastical cognizance.’
“426 U.S. at 712-16, 96 S.Ct. 2372 (emphasis added; footnotes omitted). See also Kaufmann v. Sheehan, 707 F.2d 355 (8th Cir.1983); Green v. United Pentecostal Church Int’l, 899 S.W.2d 28 (Tex.Ct.App.1995).
“Milivojevich involved the discipline of a bishop, rather than a church- member such as Lott. Nevertheless,-' ‘[f]or essentially the same reasons that courts have refused to interfere with the basic ecclesiastical decision of choosing the minister ..., this Court must not interfere with the fundamental ecclesiastical concern of determining who is and who is not [a Church] member.’[4] Burgess v. Rock Creek Baptist Church, 734 F.Supp. 30, 33 (D.D.C.1990). See also Kral v. Sisters of the Third Order Regular of St. Francis, 746 F.2d 450 (8th Cir.1984); Nunn v. Black, 506 F.Supp. 444, 448 (W.D.Va.) (‘the fact that the local church may have departed arbitrarily from its established expulsion procedures in removing the plaintiffs is of no constitutional consequence, whether one appeals the First, Fifth, or Fourteenth Amendments’), aff'd, 661 F.2d 925 (4th Cir.1981); Caples v. Nazareth Church of Hopewell Ass’n, 245 Ala. 656, 660, 18 So.2d 383, 386 (1944) (‘ “we have no power to revise or question ordinary acts of church membership, or of excision from membership” ’).
“Lott’s motion stated no grounds for a TRO, other than'an allegedly intractable disagreement over ‘rights of access [to] and - copying [of] Church records.’ ' In seeking to preempt church discipline on these grotinds,-the motion for a TRO essentially invited ’the court'to become embroiled in' the merits of a ‘fundamental ecclesiastical concern’ with which the courts must have nothing to do, namely, ‘determining who is and who is not [a Church] member.’ Burgess, 734 F.Supp. at 33. Lott has cited no case preempting ecclesiastical discipline as he urged the trial court to do, and we have found none.' Because Lott failed to show a ‘reasonable chance of success on the merits,’ the trial court did not err in denying his motion for a TRO.
[[Image here]]
"4 It is generally held that the-same considerations apply, regardless of whether the church has a congregational,' rather than a hierarchical, form of government. First Baptist Church of Glen Este v. Ohio, 591 F.Supp. 676 (S.D.Ohio 1983); Heard v. Johnson, 810 A.2d 871 (D.C.2002); Callahan v. First Congregational Church of Haverhill, 441 Mass. 699, 808 N.E.2d 301 (2004); Tubiolo v. Abundant Life Church, Inc., 167 N.C.App. 324, 605 S.E.2d 161 (2004).” .
Lott, 908 So.2d at 929-30 (footnote 3 omitted).
Thus, this Courtis recognition of Milivojevich in Lott seems to have modified principles relied upon by this Court in Yates, Nixon, and In re Galilee Baptist Church. Accordingly,- this Court has recognized that civil courts may not require churches to employ judicial notions of due process in *441 disciplining, suspending, or. expelling members; civil courts certainly may not review a church’s actions in that regard when no property rights of the church are at issue.
The present case involves a purely ecclesiastical matter: Whether the petitioners remain deacons of the church. There is no property right at issue because there is no property right to the position of church deacon. According to the bylaws, the deacons are “ordained to their work according to Acts 6:1-8 and 1 Timothy 3:8-13.” Deacons “shall actively hold office provided they faithfully discharge their duties,” and “[t]he church may, for good and sufficient cause, remove any Deacon from office at any appropriate time it deems necessary.” Neither the petitioners nor the plaintiffs allege that the petitioners had a property right in their positions a's deacons. In fact, as set but above, the petitioners alleged in their motion to dismiss that “[t]his case involves religious and ecclesiastical matters concerning who and who is not a member of [the board] and Board of Trustees of [the church], which is a religious matter that should be decided by [the board] and Board of Trustees of [the church].” Thus, the right to hold the position of deacon in the church is “merely spiritual or ecclesiastical.”
I note that it appears that church deacons have the authority to affect the church’s property. However, that fact alone does not mean that a “property right” is at issue in this case. See Foster, 406 So.2d at 391 (“ ‘The civil courts will not take jurisdiction of a controversy arising out of the removal of a minister if the right to the position is merely spiritual or ecclesiastical. ...’ ” (quoting Odoms v. Woodall, 246 Ala. 427, 429, 20 So.2d 849, 851 (1945)(emphasis added))). I further note that the plaintiffs have requested an injunction prohibiting the petitioners from continuing to serve as deacons. It appears that the plaintiffs are concerned that the petitioners may not respect the church’s decision to remove them from their positions as deacons and-may attempt .to continue to exercise the authority of a deacon. Of course,, should the. petitioners do so, their actions would potentially affect the property of the church. However, that possibility- does not transform this case into a “property right” case. The plaintiffs are merely asking that the petitioners, haying been removed from their positions as . deacons, be enjoined from taking unauthorized actions as deacons. The plaintiffs’ request for an injunction is reasonable considering that, if the petitioners no longer have the authority to act as deacons, any action they take as deacons could constitute a crime, against the church or a tort.
In their complaint, the plaintiffs request that the circuit court issue an order “declaring that the recent votes of the congregation are valid” and “declaring that ... [the petitioners] have been removed as members of [the board].” I understand this to mean that the plaintiffs are requesting the. circuit court to determine whether the church properly followed its own procedures when-its members voted on April 20, 2014,. to remove the petitioners as deacons and, based on that determination, to declare who is and is not a member of the board. Under Lott and Hundley, supra, and because who holds the position of-deacon in the church is a purely ecclesiastical matter that does not involve a property right of the petitioners, the circuit court lacks jurisdiction to do so.
However, the mere fact that the subject matter of a church dispute concerns an ecclesiastical- or spiritual issue does not preclude a circuit court from recognizing a decision rendered by the highest adjudicatory ’body of a church and, based on that *442 decision, enjoining persons from taking unauthorized actions on behalf of the church.
“[W]henever the questions of discipline or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of ... church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them.”
Hundley v. Collins, 131 Ala. at 246, 32 So. at 579(quoting Watson v. Jones, 80 U.S. (13 Wall.) 679, 722-25, 20 L.Ed 666 (1871)). See also Milivojevich, 426 U.S. at 713 (“[T]he general rule [is] that religious controversies are not the proper subject of civil court inquiry, and that a civil court must accept the ecclesiastical decisions of church tribunals as it finds them.”).
The remainder of the plaintiffs’ complaint requests “an order enjoining [the petitioners] from taking any act as a member of [the board] of [the church].” This request does not require the circuit court to decide a purely ecclesiastical or spiritual matter. Instead, this request merely requires the circuit court to recognize the outcome of a dispute purportedly resolved by the highest adjudicatory body in the church and act in light thereof. Specifically, if the plaintiffs demonstrate that the highest adjudicatory body of the church determined that the petitioners were no longer deacons, the circuit court would have jurisdiction to enjoin the petitioners from performing unauthorized acts as deacons, which actions, as stated above, could constitute a crime against the church or a tort.
Admittedly, however, it is unclear whether the April 20, 2014, vote, constituted a decision by the highest-adjudicatory body of the church. In a Baptist.church, the majority of the congregation is the highest adjudicatory body, unless the church bylaws provide otherwise. McKinney v. Twenty-Fifth Ave. Baptist Church, Inc., 514 So.2d 837, 839 (Ala.1987) (“In each Baptist church the majority of the members of the church control the business of the church,”); Williams v. Jones, 258 Ala. 59, 62, 61 So.2d 101, 103 (1952) (“Each Baptist church is within itself a pure democracy; it is the right of the majority to rule; the will of the majority having been expressed, it becomes the minority to submit; church action is final.” (emphasis added)); Gewin v. Mt. Pilgrim Baptist Church, 166 Ala. 345, 349, 51 So. 947, 948 (1909) (“The Baptist church is congregational in its policy. It is democratic in its organization. It is the right of each congregation to rule itself in accordance with the law of the church. The will of the majority, having been expressed, it becomes the minority to submit. There are no appellate judicatories.” (emphasis added)). The bylaws vest governmental authority in the church members, and “as such it is subject to the control of no other ecclesiastical organization.” None of the church’s “boards, committees or officers can usurp [the members’] executive, governmental or policy-making powers except as provided for in these by-laws.” And, “the church” may remove the deacons “at any appropriate time it deems necessary.” Thus, in the church, thé highest adjudicatory body of the church with respect to removing a deacon is a majority of its members.
Furthermore, on April 20, 2014, members of the church held a meeting and voted to remove the petitioners as deacons of the church. It is undisputed that the motion to remove passed 95-0. However, nothing before this Court suggests that the 95 church members voting in support of the motion to remove the petitioners as deacons represented a majority of the members of the. church. Thus, it is not *443 clear from the facts before this .Court that the motion passed at the April 20, 2014, meeting was a decision by .the highest adjudicatory body of the church and therefore, capable of recognition by the circuit court.
This lack of clarity, however, does not require that this Court grant the petitioners’ petition. See Ex parte Board of Trs./Dirs. & or Deacons of Old Elam Baptist Church, 983 So.2d 1079, 1093 (Ala.2007)(holding that the trial court had jurisdiction for the limited purpose of determining whether the appropriate authority in the church had terminated the plaintiffs membership and stating: “As these proceedings go forward, the trial court should focus its 'inquiry on whether ‘the* expulsion was the act of the authority within the church having the power to order it.’ ”). Furthermore, under the standard of review applicable to a petition for a writ- of mandamus, the petitioners áre the ones who must demonstrate that they have a clear legal right to the- relief they seek. The petitioners have not demonstrated that the April 20, 2014, meeting was not a decision by the highest adjudicatory- body of the church. Accordingly, the petitioners have failed to demonstrate a clear legal right to the relief sought.- .
Next, the petitioners argue that the circuit court exceeded its discretion when it denied the petitioners’ motion to dismiss the case for lack of subject-matter jurisdiction because, the petitioners' argue, the circuit court, in failing to grant the motion to dismiss, violated ARFA. Section V of ARFA provides, in pertinent part:
“(b) Government may burden a person’s freedom of religion only if it demonstrates that application of the burden to the person:
“(1) Is in furtherance of a compelling governmental interest; and
“(2) Is the least restrictive means of furthering that compelling governmental interest.”
§ 3.01, Ala. Const.1901. The petitioners’ argument, however, is based on a faulty premise.
The petitioners argue that, in order to grant the relief the plaintiffs seek, the circuit court must “interpret ambiguous bylaws of the church and ... decide internal disputes of the church, without making the church a party to the case and without giving the church an opportunity to decide the interpretation of its own. bylaws and to decide its own internal disputes.” As set forth above, that is not correct; in fact, the opposite is true. Should the circuit court determine that the plaintiffs are entitled to an injunction, the circuit court would not have to decide any ecclesiastical matter of the church, but would simply be recognizing the decision of the highest adjudicatory body of the church and enjoining the petitioners. As discussed above, the circuit court does not have jurisdiction to apply judicial notions of due process to the church’s vote, but it does have the jurisdiction to recognize the decision of the church. The plaintiffs need not prove that the decision was validly reached following standards of due process — that is irrelevant in this case. The plaintiffs must demonstrate only that the decision- was reached* by the highest adjudicatory body of the church.- Once that fact is established, the circuit court may protect the jurisdiction of the church by recognizing its decision and providing any necessary legal protections. - Accordingly, the circuit court has not violated ARFA by denying the petitioners’ motion to dismiss because the circuit court has not made a decision burdening the petitioners’ freedom of religion. Instead, at this point in the proceedings, based on the facts asserted by the plaintiffs and uncontroverted by the peti *444 tioners, the circuit court has upheld the jurisdiction of the church.
Moreover, the petitioners do not cite any authority in support of their argument that the circuit court’s decision denying their motion to dismiss for lack of subject-matter jurisdiction infringed upon the petitioners’ freedom' of religion. Assuming the petitioners have been removed from their positions as deacons, the decisión to remove the petitioners from their positions was made by the church; no action taken b;y the circuit court removed the petitioners' from those positions. As a result, it is unclear what'religious freedom of the petitioners could possibly be burdened by the circuit court. Additionally, although I recognize'that the circuit court issued a preliminary injunction enjoining the petitioners from acting as deacons in the church, the petitioners do not make any argument concerning that injunction. Thus, because the petitioners have failed to provide any authority for their argument that the circuit court’s decisions have infringed upon the petitioners’ freedom of religion, I am not convinced that they have demonstrated a clear legal right to the relief sought.
Further still, I question the applicability of ARFA to the present case. Section- VI of ARFA provides that ARFA applies to “all government rules and implementations thereofs whether statutory or otherwise, and whether adopted before or after the effective date of this amendment.” Section IV of ARFA defines “rule” as: “[a]ny government statute, regulation, ordinance, administrative provision, ruling guideline, requirement or any statement of law whatever.” Pursuant to the plain language of ARFA, a circuit court’s decision denying a motion to dismiss for lack of subject-matter jurisdiction does not appear to be either a “rule” or the implementation of a “rule” as defined by ARFA.
Additionally, a circuit- court’s decision denying a motion to dismiss is not an “implementation” of any rule of civil procedure; this is too expansive a reading of ARFA. There áre 12 states with provisions similar to ARFA. James W. Wright Jr., Making State Religious Freedom Restoration Amendments Effective, 61 Ala. L.Rev. 425, 426 (2010). None of those states has interpreted its. respective provisions as “implementing” a rule of civil procedure.
I recognize that our caselaw concerning the issues presented in this case is convoluted; nonetheless, a single, overarching principle is evident: When the highest adjudicatory body, of a church resolves a purely ecclesiastical matter, civil courts .must recognize that decision as final and may not apply judicial notions of due process to the church proceedings by which that decision was. reached. After recognizing the church’s decision, the civil court may then act .to protect the church by enjoining unauthorized actions.
Such an act by a civil court does not impinge the jurisdictional boundary between the church and civil government; it solidifies it. s By recognizing the church’s decision as final, a civil court may act to protect a church from the actions of dissatisfied, dissociated members — an act that lies within a civil court’s jurisdiction and outside the jurisdiction of a church. As the plaintiffs aptly stated in their argument before the circuit court:
“This is an action, Your Honor, to ask the Court to give effect to a proper vote of the .church to make a change in its leadership, A vote that they took, a change that they made. A change that the losers of that vote decided to ignore. And in our society, what We do instead of everybody getting guns, we come to court.
“Because we can’t- sit out there and solve it amongst ourselves. So we have *445 to come to court and file papers to ask the Court to enjoin. And as we sit here now, we are in a court of equity. Not a court of law. A court of equity. Ask .the Court to enjoin certain things to give effect to a vote that the congregation made.”
Thus, for the reasons set out above, I agree with this Court’s decision to deny the petition for a writ of mandamus.

. Acts 6:1-8 (New King James Version):
"Now in those days, when the number of the disciples was multiplying, there arose a complaint against the Hebrews by the Hel-lenists, because their widows were neglected in the daily distribution. Then the twelve summoned the multitude of the disciples and said, ‘It is not desirable that we should leave the word of God and serve *435 tables. Therefore, brethren, seek out from among you seven men of good reputation, full of the Holy Spirit and wisdom, whom we may appoint over this business; but we will give ourselves continually, to prayer and to the ministry of the word.’
"And the saying pleased the whole multitude. And they chose Stephen, a man full of faith and the Holy Spirit, and Philip, Prochorus, Nicanor, Timón, Parmenas, and Nicolas, a proselyte from Antioch, whom they set before the apostles; and when they had prayed, they laid hands on them.
"Then the word of God spread, and the number of the disciples multiplied .greatly in Jerusalem, and a great many of the priests were obedient to the faith.
“And Stephen, full of faith and power, did great wonders and signs among the people.” • ‘
1 Timothy 3:8-13 (New King James Version):
"Likewise deacons must be reverent, not double-tongued, not given to much wine, not greedy for money, holding the mystery of the faith with a pure conscience. But let these also first bé tested;, then let them serve' as "deacons, being found blameless. Likewise, their wives must be reverent, not slanderers, temperate, faithful in all things. Let deacons be the husbands of one wife, ruling their children and their own houses well. For those who have served well as deacons obtain for themselves, a good standing and great boldness in the faith which is in Christ Jesus.”

. I assume that the ‘‘religious freedom provision” to which the petitioners refer is the Free Exercise Clause of the First Amendment to the United States Constitution, That Amendment provides, in part: "[C]ongress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.” The Free Exercise Clause is applicable to .the States through the Due Process Clause’of the Fourteenth Amendment. GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1253 (11th Cir.2012).

. See also Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 655 (10th Cir.2002) (“Courts have held that churches have autonomy in making decisions regarding their own internal affairs. This church autonomy doctrine prohibits civil court review of internal church disputes involving matters of faith, doctrine, church governance, and polity.” (citing Kedroff v. St. Nicholas Cathedral, 344 U.S. 94, 116-17, 73 S.Ct. 143, 97 L.Ed. 120 (1952))); Dixon v. Edwards, 290 F.3d 699, 714 (4th Cir.2002) (holding that "the civil courts of our country are obliged to play a limited role in resolving church disputes” and that that role does not include “deciding issues of religious doctrine and practice, or ... interfering with internal church government”); and Dowd v. Society of St. Columbans, 861 F.2d 761, 764 (1st Cir.1988) (“Religious bodies must be free to decide for themselves, free from state interference, matters which pertain to church government, faith and doctrine.”).